Emmons and others vs. The City of Milwaukee.

EMMONS and others vs. THE CITY OF MILWAUKEE.

APPEAL *from the Board of Public Works in Milwaukee.* (1) *When appeal will lie.* (2) *Whether question of title can be tried.* (3, 4) *Title of city shown by acts* in pais *of owner.* (5) *One of several tenants in common may appeal.*
DEDICATION — TOWN PLAT. (6, 7) *Dedication by recorded plat.*

1. Under secs. 3 and 5, ch. 141, P. & L. Laws of 1868, a right of appeal is given not only from the assessment of damages and benefits made by the board of public works of the city of Milwaukee (in condemning land for a public park), but also where no such assessment is made because the land is held by such board to be public property.
2. Said act does not give an independent appeal to try the question of title *alone*, but only permits that issue to be tried in connection with the question of damages and benefits, and enables the court fully to adjudicate in one proceeding the rights and liabilities of the parties resulting from such condemnation of the land.
3. On such an appeal the city is entitled to show a dedication of the land to the public use by acts *in pais* of any owner thereof.
4. If an owner under whom plaintiffs claim, received compensation from the city for a part of said land which the city had attempted to con-

Emmons and others vs. The City of Milwaukee.

demn as a public street, plaintiffs are estopped to deny that such land is a public street; and evidence of such receipt of compensation should therefore be admitted.

5. Any one or more of several tenants in common of the land affected by the award of said board may appeal to the circuit court, without joining cotenants who do not desire to appeal.

6. To divest the proprietor of a town site of his title to lands, and secure them for public use, by virtue of the *plat*, a compliance with the requirements of the statute in that behalf is as essential as it would be in a *deed of conveyance* by one person to another.

7. There is nothing in the recorded plat of a portion of the city of Milwaukee, made by MARTIN and JUNEAU in 1837, which shows a dedication by them to the public use of the strip of land adjacent to the lake shore not therein platted into lots and blocks, except that fifty feet square at the east end of Wisconsin street is " reserved for a light house."

APPEAL from the Circuit Court for *Milwaukee* County.

By virtue of the provisions contained in ch. 141, P. & L. Laws of 1868, the common council of the city of Milwaukee established a park or public grounds within the limits prescribed by the act, and the damages and benefits to lots of individuals appropriated for that purpose were duly assessed by the board of public works, which board is charged by law with that duty. Such assessments were afterwards confirmed by the common council.

In that assessment, under the heading, " Description of property to be taken for the purpose of establishing a park or public grounds," the board made the following entry : " A piece of land bounded north by lot 24, block 143 ; east by Lake Michigan ; south by the south line of Oneida street ; and west by Lake street extended to Oneida street, or by lot 5, block 108 ; supposed to be public property." No assessment of damages or benefits to this land was made.

The respondents, who have the record title to an undivided three-fourths of the above described tract of land, as tenants in common, joined in an appeal to the circuit court, " from the said determination, award and return of the said board of pub-

lic works, as to their said real estate, allowing and awarding no damages for the taking thereof, and assuming and determining the same to be public property."

On the trial of the appeal, no evidence was offered of the value of the land, but the appellants (the respondents in this court) contented themselves with proof of their title thereto. It was claimed on behalf of the city, that a plat of Milwaukee, made and recorded by Martin and Juneau in 1837, offered in evidence on the trial by these respondents, operated as a dedication or grant of the land to public uses. Such plat is bounded on the west by the Milwaukee river, on the east by Lake Michigan; and is thirteen blocks in length from north to south, extending from Division street to Menomonee street. Along the whole east side of the plat there is a vacant strip of land adjacent to the lake, and varying greatly in width. On the west side of this strip, and extending into it a trifle, a square of 50 feet is designated in the east end of Wisconsin street, and commencing near the same there is written in the vacant strip the words "Reserved for Light House." Further than this there is nothing in the plat, or in the notes or certificates accompanying it, to show for what purposes such strip was intended by the proprietors, or to show any intention or attempt to include it within the plat. It appears by other maps and plats in the case, that portions of this vacant strip have since been platted into lots and blocks. The circuit court held that the plat of 1837 did not operate as a conveyance or grant of the land in question to the public for public uses.

The tract of land claimed by the respondents is said to be about 250 feet in width from lot 5 in block 108 to the lake. The city offered testimony tending to show an attempt by the proper authorities thereof to condemn 80 feet wide along the west side of the tract for the purposes of a street, known as Lake street, and that Peck and Bradley, who then owned the land, received compensation therefor. This testimony was rejected by the court.

The respondents had judgment that the award and determination of the board of public works is illegal and void, and that the same be set aside and vacated, and the city and its officers enjoined from appropriating the lands of the respondents, or interfering therewith, under and by virtue of such award and determination.

From this judgment the city appealed to this court.

*E. G. Ryan*, City Attorney, for appellant, argued that there was no right of appeal in this case from the board of public works to the circuit court, because the act gives a right of appeal only from the assessment of damages, and here there was no assessment of damages; that in such a case the owner and the land are wholly unaffected by the proceeding; and that the only case in which the board have anything to do with the question of title is that provided for by sec. 5 of the act of 1868, under the provisions of which, where the city itself had any claim of title to lands taken for the purpose, controverted by persons claiming to be private owners of it, the damages are to be awarded to such private claimants, but the claims of the city are to be taken into consideration in estimating the damages, and, upon appeal, the title of the city shall be tried as one of the issues involved in the appeal. 2. That if an appeal lay, it could not be taken by some only of several tenants in common; that an assessment of damages under the act would be of damages to the entire lot, and the amount would be payable to all the tenants in common, and the proportion to which each of the tenants in common was entitled is a matter with which the city had nothing to do; that it would be an intolerable burden on the city if parties had the power to subdivide rights and multiply appeals; and that this would be especially so where the city claimed title, and might be compelled to litigate its title with each of the tenants in common separately, an adjudication in its favor as against one not concluding the others. Counsel further argued that if one tenant in common may maintain a separate appeal,

the right of appeal is several in each of the tenants in com-
mon, and this appeal was ill taken by three of them jointly.
3. That if the appeal lay at all, it was an appeal from an
assessment, for the purpose of a re-assessment in the circuit
court, the question of title being a subordinate issue; and when
the parties appealing refused to give any evidence of damages, ·
in the circuit court, they should have been held to have aban-
doned their appeal, and a nonsuit should have been granted.
4. That as there was no express evidence upon the plat, or in
the notes appended to it, of any *reservation* to the proprietors,
of the open space along the lake shore, in Martin & Juneau's
addition (including the land here in dispute), and as the same
was not platted into lots, there was either a dedication or an
ambiguity; that if there was an ambiguity, it arose from the
equivocal effect of the lines used on the plat; and that it was
error to reject parol evidence offered by the city to explain the
ambiguity.    *Thompson v. Jones*, 4 Wis., 106; *Ganson v. Madi-
gan*, 15 id., 144; *Buchanan v. Curtis*, 25 id., 99; *Barclay v.
Howell*, 6 Pet., 498.    5. That in the very strictest construction
against the grant, the plat operated to grant a private right of
way over the open strip to all grantees of lots abutting upon it
and having no other street access (*Underwood v. Stuyvesant*, 19
Johns., 186; *Matter of 17th Street*, 1 Wend., 271; *Matter of
Lewis St.*, 2 id., 473; *Livingston v. Mayor*, 8 id., 89, 98, 105;
*Watertown v. Cowen*, 4 Paige, 513); that the respondents had
therefore, at most, only a naked fee in the land, with no right
to enclose it, or otherwise interrupt the right of way over it;
that in a village or city such a right of way becomes so gen-
eral and indiscriminate as to be practically equivalent to a
public right of way, except as to the public duty and author-
ity over it; and that when the public authority converts the
land to a public use, leaving access to all lots abutting upon it,
leaving a public street over it, there is no damage, real or nom-
inal, to the owners of the fee.    6. Counsel further argued at
length that the land in question was by the plat expressly

" reserved for a light house," i. e. dedicated to the public for the construction of a light house and for open approaches to it ; or, if those words are to be interpreted as applying only to the fifty feet square delineated on the plat near those words, then the mode in which the open space along the lake shore is delineated is sufficient evidence of a dedication of the land to the public as a *street.* *Yates v. Judd,* 18 Wis., 118 ; *Arnold v. Elmore,* 16 id., 509 ; *Gardiner v. Tisdale,* 2 id., 153 ; *Ely v. Bates,* 5 id., 467 ; *Sanborn v. Railway Co.,* 16 id., 19 ; *Mariner v. Schulte,* id., 692 ; *Weisbrod v. Railway Co.,* 18 id., 35. There was no need of proving a *user* by the public. *Hanson v. Taylor,* 23 Wis., 547 ; *Buchanan v. Curtis,* 25 id., 99. And the fact that the city had *taxed* the *locus in quo* would not affect the rights of the public. *Lemon v. Hayden,* 13 Wis., 159.

*Smith & Stark,* for respondents :

The respondents clearly proved themselves the owners of the undivided three-fourths of the land in question, unless such land was so dedicated to the public use by the plat acknowledged and recorded in August, 1837, or otherwise, as to authorize the city to devote it to the purposes of a public park without making compensation to private parties. 1. The statutes of Michigan in force when this plat was recorded (Laws of 1833, p. 531), provide that " such maps or plats as are required by this act to be recorded, shall *particularly set forth* and *describe* all the public grounds within such town, by its *boundaries, courses* and extent, and whether it be *intended for streets, alleys, commons or other public uses,* and all the lots intended for sale by progressive numbers, and their precise length and width ; " and such maps or plats duly made, acknowledged and recorded, " shall be deemed a sufficient *conveyance* to vest the fee of such parcels of land as are therein expressed, named or intended to be for public uses, in the county in which such town lies, in trust, to and for the uses and purposes therein named, expressed or intended, and for no other use or purpose whatever." On the plat in question, a strip about 250 feet in width

was left open and not divided into lots or blocks, between the eastern tier of blocks and Lake Michigan. Near the east end of Wisconsin street, which is 100 feet in width, a square of fifty feet is marked out in the middle of the street, leaving twenty-five feet of the street on each side; and the plat bears these words written upon it, commencing close by this square and extending northerly along the vacant space above mentioned, about half its length, to wit: "Reserved for lighthouse." Upon the vacant space north of the lighthouse square is no mark or description indicating the use for which such space was intended. In the certificate of acknowledgment appended to the plat are these words: "The reserve at or near the termination of Wisconsin street, being for a lighthouse, and to revert to the use of the public for a street, in case the lighthouse should not be located thereon by the officers appointed to locate the same." Upon these facts counsel argued that only the fifty feet square above described was reserved for a lighthouse; and that as the strip along the lake was not platted, nor by the plat devoted to any particular purpose — as the plat gives neither the courses nor extent of the strip, and appoints it to no public use, there was no conveyance or dedication of the land to any public use, under the statute. 2. The offers of parol evidence of the intention of the proprietors to dedicate the land were properly rejected. To sustain a claim of dedication by the plat, the intention to dedicate and the particular use intended must appear upon the plat itself. 1 Greenl. Ev., § 275 et seq. 3. It was proven beyond dispute that down to 1850 the land for several blocks back from the lake was nearly all open and unimproved, and as free to the common use of the public as the particular ground in question; that in 1852, Juneau and Martin conveyed this disputed ground, as their own property, to Peck and Beasley, by whom and their assigns it has ever since been claimed as private property; that in 1853 the city authorities assumed it to be private property by causing a portion of it to be taken and paid for as a public high-

way; and that, aside from Oneida street and possibly Lake street, the ground has never been recognized or treated by the authorities as public property, or used for any purpose of a public nature. These facts would seem to exclude the possibility of a sincere claim on the part of the public to any right whatever in the tract apart from the plat itself. *State of Wisconsin v. Joyce*, 19 Wis., 91; *Gardiner v. Tisdale*, 2 id., 153; *Connehan v. Ford*, 9 id., 243; *Lemon v. Hayden*, 13 id., 159; *Hanson v. Taylor*, 23 id., 547; *Buchanan v. Curtis*, 25 id., 49. 4. If this land, or any part of it, was subject to the easement of a public highway, that would not authorize its appropriation to the use of a public park without compensation to the owners of the fee. *Williams v. R. R. Co.*, 16 N. Y., 97; *Ford v. Railway Co.*, 14 Wis., 609. 5. Counsel further argued that under the act of 1868 the board of public works seem to have authority to determine in the first instance what right, if any, the city has to the property; that from their decision any party in interest has a right of appeal to the circuit court; that the right claimed by the city may there be tried as an issue involved in the appeal, *without further pleadings;* that in this case the only issue tendered by the appeal was as to the title claimed by the city, there being no award of damages; and that it follows necessarily that when the respondents have established their right of property, the award must be set aside, and the city left to proceed *de novo.*

LYON, J. I. The right of appeal to the circuit court from the award and determination of the board of public works, in this and like cases, is given by sections 3 and 5 of ch. 141, P. and L. Laws of 1868, which are as follows:

"Sec. 3. In all respects, except as to petition and bond aforesaid, the proceedings in regard to said park or public grounds shall be the same as required by said chapter [ch. 141, Laws of 1852], and the several acts amendatory thereof, in buying, laying out, opening or widening streets; with the same

right of appeal to the circuit court from assessments of damages and benefits as is given in like cases for the damages and benefits in opening and widening streets.

"Sec. 5.   In estimating the damages to be awarded to any person or persons for property taken, any right which the city has, or may have at the date of such estimate, in such property, through grant, dedication or otherwise, shall be taken into consideration, and if such right claimed by the city is denied by parties in interest, it may, by appeal to the circuit court by either of the parties entitled to an appeal, be tried as one of the issues involved in the appeal and without further pleadings."

By the provisions of the city charter referred to in section 3, it will be seen that any person whose property has been taken for the proposed park may appeal to the circuit court from the assessment of damages or benefits.

These sections are *in pari materia*, and must be construed together; and, upon a careful consideration of them, I am satisfied that they give the right of appeal not only from the assessment of damages and benefits, but also where, as in this case, no such assessment has been made because the property is held by the board of public works to be public property. But section 5 does not, in my opinion, give an independent appeal to try the question of title alone, but only permits that issue to be tried with the question of damages or benefits. Such seems to be the significance of the provision which authorizes the right to the property to be tried "as *one* of the issues involved in the appeal."   This construction of the statute enables the court, in one proceeding, fully to adjudicate the rights and liabilities of the parties resulting from the condemnation of the property to the public use, and thus avoids circuity of action with the attendant delay and expense.   It is not difficult to believe that, by the act of 1868, the legislature intended to accomplish these most desirable objects.

If the above views are correct, it necessarily follows that the

judgment of the circuit court is erroneous. If the respondents can establish their right to damages, there should be an assessment thereof on their appeal to the circuit court; and, instead of an injunction, they should have judgment for the damages so assessed, against the city.

II. On the question of dedication a few remarks must suffice. We do not think that the plat made and recorded in 1837 by Martin and Juneau operates as a dedication or grant of the *locus in quo* to the public use. We fail to find in that plat, or in the accompanying notes or certificates, any evidence of an intent by the proprietors to make such dedication or grant. It was held in *Gardiner v. Tisdale*, 2 Wis., 153, that in order to transfer the title to lands from the proprietor of a town site, and to secure such lands to the public use, by virtue of the plat thereof, a compliance with the requirements of the statute in that behalf is just as essential to divest the proprietor of his title, as it would be in a deed of conveyance by one person to another. In this case the plat does not show the slightest attempt by Martin and Juneau to grant or convey the *locus in quo* to any public use. The words "reserved for light house," written in the blank space along the lake shore, which includes the land in question, evidently relate only to the 50 feet square at the end of Wisconsin street marked on the plat, and have no reference whatever to the land included in the space in which they are written.

It is scarcely necessary to say that it is competent for the city to show that any owner of the *locus in quo* has dedicated the same to the public use by acts *in pais;* and all testimony which would tend to prove such dedication should be admitted.

III. If Peck and Bradley (under whom the respondents claim title), when they were the owners of the land in question, received compensation of the city for the 80 feet strip known as Lake street, which the city attempted to condemn for a street, they and their grantees are estopped to deny that such strip is a public street. *Karber v. Nellis*, 22 Wis., 215.

The evidence that Peck and Bradley received such compensation should, therefore, have been received.

IV.   We are not aware of the existence of any rule of law which requires all of the tenants in common of the land condemned to join in the appeal from the award or determination of the board of public works. We see no good reason why such of them as desire to do so may not join in an appeal, without the presence or concurrence of those who are content with the award, and do not wish to disturb it.

*By the Court.* — The judgment of the circuit court is reversed, and a *venire de novo* awarded.