THE CITY OF CHICAGO

*v.*

HENRY S. VAN INGEN.

</div>

<div align="right">624:40 LRA6</div>

<div align="center">*Filed at Ottawa October 29, 1894.*</div>

1. DEDICATION—*designating river on plat of addition not a dedication.* The designation of the margins of a navigable stream by parallel lines upon the plat of a city addition does not operate as a dedication of the *land* between such lines to the public.

2. RIPARIAN OWNERS—*lots in such addition will extend to the river.* Such platted river lines only indicate where the owner expected the river to be when improved, and do not limit the boundaries of lots, which will extend to the river notwithstanding the plat lines.

3. SAME—*rights of, in water and bed of river.* A riparian proprietor upon a river owns to the center thereof, subject to the easement of the public over the navigable portion of the stream.

4. SAME—*common law right to build docks and wharves.* Such an owner on a navigable stream has, without special legislative authority, a right to erect docks and wharves, conforming to the regulations of the State for the protection of the public, and to so place them as to have the benefit of the navigable part of the stream.

5. But the right to build such wharves and docks terminates at the point of navigation, unless special authority is conferred.

6. DOCK PRIVILEGE—*when permit to build dock is not revocable.* A permit by the city of Chicago to a riparian owner upon the river to build a dock, in consideration of which such owner quit-claimed to the city certain territory for navigation purposes, cannot, after work done and expenditures made, be revoked by the city.

APPEAL from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

Under the ordinances of the city of Chicago the appellee applied to the city engineer for a permit to dock his property on the north branch of the Chicago river. A question arose between him and the assistant city engineer as to the line of the dock, and after considerable discussion it was agreed that permits should be issued, one to dredge away the front of the property, and the other to allow a dock to be built on what is known as the "permit dock line." The appellant, however, required that the appellee should give a quit-claim deed of so much of lots 13 and 14 of the property as lies west of the dock then built on the front of the same. This deed was given to the city, and a permit was issued allowing appellee to dredge the river back to the "permit dock line," cutting off twenty feet, more or less, of his front, and another permit was issued allowing him to build a dock on the same line. Subsequently the appellee proceeded with the dredging, and the river was dredged back to the line. After he had finished the dredging he commenced to build the dock, and when quite a portion of it was built the assistant engineer of the city undertook to revoke the permit. The appellee thereupon filed a bill for an injunction, asking that the city be restrained from interfering with his completion of the dock. A preliminary injunction was granted, and thereafter, when the case came on for hearing, the injunction was made perpetual.

Mr. ADOLPH KRAUS, and Mr. SIGMUND ZEISLER, for the appellant :

Immediate opening and user, by the public, of all the streets for their entire length, or immediate formal acceptance by some competent public authority, cannot be necessary to give effect to a dedication of land to the public use of a street by the making of a town plat, and the selling and conveying of lots with reference to the

plat.   A municipality must be permitted to wait its reasonable time for opening and improving its public streets, as its own resources and the public need may allow and require, without thereby rendering its streets subject to appropriation for the exclusive use and enjoyment of individuals.   *Lake View* v. *LeBahn*, 120 Ill. 103.

An acceptance of a dedication of a highway may be evidenced by the public officers taking charge of the road and repairing it at public expense, or, where it needs no repair, by placing it on the map of roads for the proper district.   *Forbes* v. *Balenseifer*, 74 Ill. 186; *Gentleman* v. *Soule*, 32 id. 271; *Rees* v. *Chicago*, 38 id. 322; *Insurance Co.* v. *Littlefield*, 67 id. 368; *Princeton* v. *Templeton*, 71 id. 68; *Fisk* v. *Havana*, 88 id. 208; *Littler* v. *Lincoln*, 106 id. 368.

The owners may dedicate to the public use highways by water as well as by land, and if, when dedicated, they are not passable, the public may make them so.   Gould on Waters, (2d ed.) sec. 111, p. 214.

A canal cut for the purpose of improving the navigation of a stream may be dedicated to the public.   *Weatherby* v. *Meiklejohn*, 56 Wis. 73; Gould on Waters, sec. 144, p. 289, note 1.

Mr. DAVID FALES, for the appellee :

To constitute a complete dedication there must be an acceptance.   This need not be by any formal act of acceptance, but there must be user, or some other act indicating acceptance, by those authorized to represent the public.   *Gentleman* v. *Soule*, 32 Ill. 271; *Littler* v. *Lincoln*, 106 id. 353; *Prouty* v. *Winnetka*, 107 id. 218; *Hamilton* v. *Railroad Co.* 124 id. 242; *Chicago* v. *Stinson*, 124 id. 510; *Eckhart* v. *Irons*, 128 id. 557; *Trustees* v. *Walsh*, 57 id. 370; *Chicago* v. *Drexel*, 141 id. 89.

As stated by the Supreme Court of the United States in *St. Louis* v. *Rutz*, 138 U. S. 226 : "The Supreme Court of Illinois has established and steadily maintained, as a rule of property, that the fee of the riparian owner of lands in

Illinois bordering on the Mississippi river extends to the middle line of the main channel of that river." *Middleton* v. *Pritchard,* 3 Scam. 510; *Braxon* v. *Bressler,* 64 Ill. 488; *Houck* v. *Yates,* 82 id. 179; *Cobb* v. *Lavalle,* 89 id. 331; *Lavalle* v. *Strobel,* 89 id. 370; *Ice Co.* v. *Shortall,* 101 id. 46; *Brooklyn* v. *Smith,* 104 id. 429; *Trustees* v. *Schroll,* 120 id. 509; *Buttenuth* v. *Bridge Co.* 123 id. 535; *Dutton* v. *Strong,* 1 Black, 23; *Railroad Co.* v. *Schurmeier,* 7 Wall. 272; *Yates* v. *Milwaukee,* 10 id. 497.

It is said in *Brisbine* v. *St. Paul and Sioux City Railroad Co.* 23 Minn. 114: "Among his rights as a riparian owner are access to the navigable part of the river from the front of his land, and the right to make a landing, wharf or pier, for his own use or the use of the public." *St. Louis* v. *Rutz,* 138 U. S. 226; *Boorman* v. *Sunnuchs,* 42 Wis. 233; *Boom Co.* v. *Reilly,* 46 id. 237; *Tuck* v. *Olds,* 29 Fed. Rep. 738.

Mr. JUSTICE SHOPE delivered the opinion of the court:

It is claimed by appellant that the space between the parallel lines designated on the plat of Fullerton's third addition to Chicago as the "North Branch of Chicago river," was, by the plat, dedicated to the public as a highway for navigable purposes; that appellee's lots terminated at the platted line, and that he had, therefore, no right, in the construction of his dock, to extend the same over and across the line thus designated; that by the platting of the land, hereinafter described, into lots, blocks, streets, alleys and railroad right of way, and the acknowledgment and recording thereof, there was a valid dedication, under the statutes, (Rev. Stat. chap. 109, "Plats,") by the proprietor, of the space between the parallel lines aforesaid, purporting to embrace that portion of the north branch of the Chicago river, so as to vest the fee thereto in the municipality for public uses. As we view this record neither of said contentions can be sustained. The city admitted, in its answer to the original bill, that the complainant was "the owner of the bed

of the river to the center line thereof opposite and adjacent to said lots 8 to 14, inclusive, * * * subject to the right of navigation," etc. This admission of the answer is borne out by the testimony of Fullerton, the original proprietor, and by the certificate of the surveyor to the plat of said addition, introduced in evidence. That certificate is as follows :

"I, Samuel S. Greely, do hereby certify that I have surveyed that part of the north-east quarter of section 31, town 40, north, range 14, east of the third principal meridian, lying east of the north branch of the Chicago river, and that I have subdivided the same into lots, blocks, streets, alleys and railroad right of way, all of which is correctly represented upon the plat hereon drawn.

"Chicago, February 3, A. D. 1882.

SAMUEL S. GREELY, *Surveyor*."

It will be at once observed that the survey, subdivision and platting were only of that part of the quarter section "lying east" of the river, and it cannot be pretended, the correctness of said certificate not being questioned, that the river was surveyed, and formed a part of said subdivision as a proposed highway. By fair inference, at least, the subdivision of the land, only, into lots, blocks, streets, alleys and railroad right of way carried the area of lots platted, to the river. True, there is a line upon the plat, presumably drawn to follow the general trend of the north-easterly edge of the river, parallel with a like line on the opposite south-westerly side of the stream, and the cross-bill of the city alleges that the north branch of the Chicago river is wholly within the territorial limits of said city and subject to its jurisdiction, and that it is entitled to receive and accept dedications of property for highway purposes ; yet, in the absence of evidence showing that the river formed a part of said subdivision, and was accordingly platted as a proposed highway for the public, no authority need be

cited to show that the court cannot presume, as against
adjacent lot owners, that there was a dedication of the
river to the public use by the mere fact of its exclusion
from such survey and subdivision, and that it is desig-
nated on the said plat of the proprietor, between the par-
allel lines, as the "North Branch of Chicago river." The
proprietor dedicated nothing to the general public save
streets and alleys, and left the river without any dedica-
tion thereof, except as might be presumed or inferred
from his subdivision of the land adjacent, and the exclu-
sion of the river from such subdivision by the parallel
lines above mentioned. It would therefore seem clear
that, the river not having been disposed of in the making
of the subdivision, no intention on the part of the pro-
prietor to confine adjacent subsequent lot owners to the
said parallel lines is indicated by the said plat, and it is
fair to presume that if the proprietor intended dedicating
the river, *as land*, to the public, he would have done so in
the mode prescribed by the statute, and as a part of
his scheme of subdivision.

Conceding, however, that the purpose of the proprie-
tor in omitting the river from the subdivision was to
leave it out for user by the public, and that the parallel
lines were simply drawn as boundaries with reference to
such user, it is not to be presumed that a dedication of
the *land* within said lines was intended. The purpose,
undoubtedly, as shown by the testimony of Fullerton
himself, and witness Carlson, of the Greely-Carlson Com-
pany, that made the said subdivision, was to provide for
a highway by water, and that the parallel lines were
intended to indicate, at most, the river as it would be
when improved. Fullerton, upon this point, testified,
that the purpose of the plat showing the river was to
show the river as it would be when improved. Carlson,
that the space between the parallel lines "was the part
to be occupied by the river when improved." The river,
at the time of said subdivision, being, as shown by the

evidence, navigable part way up at that place, the proprietor, naturally supposing that the river would be improved for navigation, left the same out of the subdivision, but did not give the land covered by water, or embraced within the parallel lines, to the public as a highway. The fee was left in the adjacent owners to the center of the stream, and by said parallel lines the said proprietor indicated the easement of the public, as nearly as practicable, in the stream when improved for that purpose. It is therefore apparent, the answer of the city conceding the fee to the center of the river to be in appellee, that until the public, by due process of law, divested him of his riparian rights therein, or by improvement or otherwise, in compliance with law, made the river coincide with the said platted parallel lines, appellee, under proper regulations of the city, would have the right to build a dock, so as to have the benefit of the navigable part of the stream.

It is clear that the admission in the answer was in accordance with the facts, and the legal effect, no attempt having been made to include the river in the subdivision, and thereby dedicate it to public use, is, that appellee's lots were bounded by the river, and not by the arbitrary line. An extended discussion of the testimony will be unnecessary, and it will suffice to say, that in our opinion the record fails to show a dedication of the river as a highway, within the meaning of section 1, chapter 109, of the Revised Statutes, even if it be conceded, as contended, that said section may be construed to apply to streams dedicated to public use in the same sense as "land" dedicated to such use.

But it is contended, that by the description of said lots in the deed from Fullerton to appellee the boundary thereof was limited to the platted line, by the language referring to said lots as "lying east of the north branch of the Chicago river, according to map recorded in the recorder's office of Cook county," etc. This cannot be

regarded as material, for the reason, as we have seen, that the river was no part of the subdivision, and that the parallel lines were placed on said map for the sole purpose of indicating where the river would be when improved. The grantor in the deed, the consideration of which was $85,000, evidently did not intend said platted line to be the south-west boundary of said lots, else it is probable he would have said so in his deed. Nor can it be supposed that by such language his intention was to render the property, especially valuable for dock purposes, of undoubtedly much less value for such purposes. The consideration expressed in the deed does not so indicate, and appellee did not so understand it. In answer to the question, "What do you understand this line, that lies inside of or rather easterly of the permit dock line, to be?" appellee testified: "I should suppose that to be the west line of the property that had been sold up to the river. That was what was the shore line, subject to the rights to the center of the stream." It therefore seems clear, that while the platted line might have been regarded, in a sense, as the lot line, it was not so by reason of any express dedication of the land and water beyond it, but as only indicating the line of the river if improved, and that the grantee, until such time, owned to the center of the stream.

The question therefore remaining for determination is, whether appellee had the legal right to construct a dock at the place he designed and undertook to build it. Since 1888 the city, nearly every year, as appears from the evidence, has done more or less dredging, and improved the navigability of the river, and the stream having been thus rendered more suitable for traffic and commerce by navigation, the land of appellee became correspondingly more valuable for dock purposes. A considerable portion of appellee's lots, at places, projected into the river, and the water was quite shoal, so that in order to build his dock within access of the navigable

channel, which lay some distance away and along the opposite shore, appellee was compelled to do a large amount of excavating and dredging. It appears, also, that there was no attempt by appellee to build his proposed dock, to any appreciable extent, beyond the water line. True, for a very short distance on lot 8, owing to the irregularity.of the water line, the contemplated dock would extend out upon the shoal water; but at the north and south ends of lot 8, and midway the dock line in front of lot 9, the bank extended a considerable distance west of said dock line into the river, and would have to be removed to admit of approach to the dock. At lots 10, 11, and part of 12, the water line was back of the dock or platted line, practically one-fourth the length of the lots. It was contemplated that the dock would be rendered accessible only by dredging and widening the river, and in order to secure access to and benefit of the navigable part of the stream, permission to build the dock on the "permit dock line," and extend the north end out toward the river some twenty-seven and one-half feet, was sought for by the one party and granted by the other.

In *Chicago* v. *McGinn,* 51 Ill. 266, it was expressly held that the water and bed of the Chicago river are the common property of the riparian owners, subject only to an easement of the public for the purpose of navigation. The question, however, as to whether the north branch of the Chicago river is navigable does not arise in this case, as it is admitted on both sides to be so, and, it appears, was so regarded by abutting owners and the public authorities. While it does not appear that the space indicated on the Fullerton plat as the north branch of Chicago river, presumably to the width of one hundred and eighty feet, was dedicated to the public as land, it was, we think, clearly the intention of the proprietor, in platting the lands on each side into lots, blocks, etc., to leave the water-course for the use of the public for pur-

poses of navigation, and it is also clear that the city, on behalf of the public, accepted the same and assumed jurisdiction and control over it. Thus, at the time of the purchase of said lots by appellee the river had been improved so as to be navigable for craft to within from three to five hundred feet of his property, and subsequently, and before the attempted erection of said dock, the channel had been dredged and deepened to a point north of his property. The city had passed ordinances regulating the building of wharves, docks, etc., and providing that certain of its officers might grant permits to riparian owners to construct the same, and had otherwise assumed supervisory control and jurisdiction of the water-course and approaches to it.

There being nothing in this record, as we view it, on the part of Fullerton in making said subdivision and plat and leaving the river as a waterway for the public, nor in his said deed to appellee, manifesting an intention to preclude the fee to the center of the stream, or the riparian rights of adjacent owners, it may be said, as in *Canal Trustees* v. *Haven*, 11 Ill. 554: "By the common law, a grant of land bordering on a highway or river carried the exclusive right and title in the highway or river to the center thereof, subject to the right of passage in the public, unless the terms of the grant clearly indicated an intention on the part of the grantor to confine the grantee to the edge or margin." There was, in the case at bar, no limitation upon appellee's dominion or ownership in the premises upon which the dock was to be built, save ordinances and regulations of the city imposed for the protection of the public rights, as no contrary intention is shown by said subdivision and plat or by the deed to appellee. He had the exclusive right and title to the center of the river, and the only restriction upon him as to the distance out he should build his dock was the point of navigability, and that the dock be so confined to the shore as not to interfere with the rights of others or become a

public nuisance, and constructed subject to such general rules and regulations as may have been lawfully imposed to preserve and protect the public rights. Dillon on Mun. Corp. (2d ed.) sec. 70 ; *Dutton* v. *Strong,* 1 Black, 25 ; *Railroad Co.* v. *Schurmeier,* 7 Wall. 272 ; *Yates* v. *Milwaukee,* 10 id. 497 ; *Chicago* v. *Laflin,* 49 Ill. 172 ; *Ensminger* v. *People,* 47 id. 384.

Dillon (Mun. Corp. *supra,*) says : "By the common law the riparian owner has the right to establish a wharf on his own soil, this being a lawful use of the land. The right is judicially recognized in this country, and riparian proprietors on ocean, lake or navigable river have, in virtue of their proprietorship, and without special legislative authority, the right to erect wharves, quays, piers and landing places on the shore, if these conform to the regulations of the State for the protection of the public, and do not become a nuisance by obstructing the paramount rights of navigation. * * * The right terminates at the point of navigability, unless special authority be conferred, for at this point the necessity for such erections ordinarily ceases." And practically the same language was used in *Dutton* v. *Strong, supra.*

In *Yates* v. *Milwaukee, supra,* it was insisted that the premises there in question were dedicated to the public by the fee owners as a highway by water, and that the defendant city had the right to remove the wharf maintained by the plaintiff upon his adjacent lot, and the court there held : "Whether the title of the owner of such lot extends beyond the dry land or not, he is certainly entitled to the rights of the riparian proprietor whose land is bounded by a navigable stream. Among these rights are access to the navigable part of the river from the front of his lot, the right to make a landing, wharf or pier for his own use or for the use of the public, subject to such general rules and regulations as the legislature may see proper to impose for the protection of the rights of the public, whatever those may be." The same

principle was followed in *Chicago v. Laflin, supra,* where it was held that, subject to the easement of the public over and upon the navigable portion of the stream, the adjacent proprietor was the owner *usque ad filum aquœ,* and that he would have the right to use and enjoy the same as his own in any lawful manner, provided he did not thereby impair or obstruct the easement of the public.

Further examination and citation of authorities will be unnecessary. It is clear, the boundary of appellee's lots not being restricted, by the terms of his deed or by dedication of any part of his lots within said parallel line, to such line, that he was owner in fee to the center of the stream, and, as a riparian proprietor, had the right, subject to proper municipal regulations, to build the proposed dock so as to have the benefit of the navigable channel of the stream.

No question as to the right of the city to establish a dock line at the place here contended for, and widen the channel of the river so as to take the intervening land, under the general powers granted in the Cities and Villages act to deepen, widen, dock, alter or change the channel of water-courses, and to erect, regulate and control wharves, docks, etc., without making just compensation to appellee, is presented upon this record. No attempt was made on the part of the city to establish a dock line at the place in question, by ordinance or otherwise. But it may be said that riparian rights are property, protected by law, and in many instances, as in this, valuable. In respect to such rights, as in all cases where private property is sought to be taken for public use, the owner cannot be divested thereof without just compensation being first made. *Chicago* v. *Laflin, Yates* v. *Milwaukee,* and *Ensminger* v. *People, supra.*

The city, under the power conferred by the general law, by ordinance placed all work for the widening, deepening or dredging of the Chicago river and its branches under the supervision and control of the commissioner of

public works. (Sec. 558, Consolidated Ordinance.) By other sections of the ordinance the Chicago river and its branches, to their respective sources, are declared to be portions of the harbor of the city of Chicago. Provision is made for the appointment of a harbor master, and all persons engaged in repairing, renewing, altering or constructing any dock within the city of Chicago are required to produce to the harbor master a permit therefor from the department of public works of the city, specifying the character and location of the work, and in default thereof the harbor master is required to stop the same and cause the arrest of the parties engaged therein, etc. In compliance with the requirements, appellee produced to the department of public works of the city his plans and specifications, showing the character and location of the proposed dock, and thereupon the commissioner of public works gave appellee permission to build the same upon a line indicated on appellee's map as the "permit dock line," and to be completed in the time and manner satisfactory to said commissioner, the permit, however, not to take effect until it bore the certificate of the assistant engineer that the lines of the work had been given. Said permit was subsequently endorsed, certifying that the lines of the work had been given December 23, 1891. The evidence shows that by the lines thus given the dock would extend out at the west corner of lot 8, 27.55 feet west of the line on the said plat, and run thence back south-easterly to the end of the dock in front of lot 12 on said "permit dock line." In consideration of said permit, appellee, at the request of the city authorities, executed to the city a quit-claim deed in due form, conveying, for the purposes of navigation, his title and interest in lots 13 and 14, opposite the line of the dock in front of those lots. After the work had progressed to a considerable extent, and appellee had gone to large expense in respect thereof, no complaint having been made or pretence that the work was not being done to the sat-

isfaction of the commissioner of public works or in viola-
tion of the permit, the assistant engineer, claiming to act
by authority, interrupted the work and undertook to re-
voke the permit. No reason is shown for this conduct,
and the sole ground upon which the city predicates its
right to revoke said permit is, that appellee was build-
ing his dock over and beyond the platted line, that the
land west of such line was dedicated to the public, etc.

What has already been said disposes of this conten-
tion. Appellee was constructing his dock on the "permit
dock line," or the line given him by the assistant engi-
neer as the front line of his dock. When appellee's per-
mit was taken away he demanded a return of his deed,
but this the city refused to surrender to him. What, if
anything, passed by the deed to the city, and the pur-
pose and legal effect of it, are not matters for determina-
tion here. As it appears from the evidence that the
making of the deed and granting the permit were co-
temporaneous, and parts of the same transaction, each
was a sufficient consideration for the other, and presuma-
bly, at least, secured rights mutually advantageous. It
is not shown or pretended that the construction of the
proposed dock, as appellee attempted to build it, would
in any way interfere with or obstruct the free use of the
river for purposes of navigation, or that the public in-
terests required the premises upon which it was being
built to remain unoccupied. On the contrary, the evi-
dence all tends to show that the excavating and dredging
by appellee, in the building of his dock, would tend to
widen the stream and render it more navigable. No ques-
tion is raised by the city as to the authority of the officers
granting the permit to grant the same, or of their lawful
powers in this respect. Nor does it appear that the com-
missioner of public works,—the officer designated by the
ordinance to grant such a permit, and to whom alone the
power of revocation is reserved in the permit,—has ever
expressly revoked the same.

By granting the permit to appellee in consideration of his deed, and the designation by the officer of the city of lines for the work, appellee was induced to act greatly to his prejudice, if appellant and its officers be allowed to revoke the permit. On the clearest principles of equity we think the city ought not be permitted so to do.

It will be unnecessary to examine, here, other questions raised. On the whole, and after a careful consideration and study of this record, we are of opinion that the court below, in awarding a perpetual injunction restraining the city and it officers, etc., from interfering with appellee in the building of his dock and from revoking said permit, decided correctly, and its decree will be affirmed.

*Decree affirmed.*