[No. 4866.   Decided December 17, 1903.]

COLUMBIA & PUGET SOUND RAILROAD COMPANY, *Respondent,* v. CITY OF SEATTLE *et al., Appellants.*[1]

DEDICATION — INTENTION — PLATS — STREETS NOT DESIGNATED — PRESUMPTION. An intention to dedicate a street below the line of high tide at the west side of a plat will not be presumed from the fact that the streets at right angles thereto are not closed at this point, and are closed on another part of the plat, when a blank space is left and no street is designated there by name, or the boundaries marked, while the other streets are designated both by name and boundaries, and on the east side a street is so designated; especially in view of the law of Oregon territory in force at the time requiring the width and boundaries of streets to be designated on the plat, and since an intent to dedicate is not presumed and must clearly appear.

STREETS—PRESCRIPTION—USE OF PUBLIC NOT INCONSISTENT WITH PRIVATE USE—ACCESS TO PRIVATE WHARF AND DEPOT. Where a railroad company constructed and maintained piles and planking upon its land immediately adjoining its railway tracks and depot and maintained a roadway to its private wharf, the use thereof by the public for twenty years, for the purpose of gaining access to the tracks, depot, and wharf, was not inconsistent with private ownership and did not establish a public street by adverse usage.

SAME—RAILROADS—APPLICATION FOR FRANCHISE—ADMISSIONS. In such a case, an application for a franchise to build its railroad within the city including the land in dispute is not an admission that it is not the owner of the land.

DEED—CONSTRUCTION—ADVERSE POSSESSION—COLOR OF TITLE. A deed conveying all the grantor's land "in, upon or about" a certain

[1]Reported in 74 Pac. 670.

townsite laid out by the grantor, is sufficiently broad and definite to constitute color of title to a strip of land thirteen feet in width immediately adjoining the west side of said plat within the patent line of the grantors donation claim.

Appeal from a judgment of the superior court for King county, Hatch, J., entered July 3, 1903, after a trial upon the merits before the court without a jury, quieting the plaintiff's title to premises and granting an injunction. Affirmed.

*Mitchell Gilliam* and *William Parmerlee,* for appellants, to the point that the plat showed a dedication of a street at the point in question, cited: *Webb v. Demopolis,* 95 Ala. 116, 13 South. 289, 21 L. R. A. 62; *San Francisco v. Center,* 133 Cal. 673, 66 Pac. 83; *Amador County v. Gilbert,* 133 Cal. 51, 65 Pac. 130; *Coe College v. Cedar Rapids* (Iowa), 87 N. W. 444; *Hanson v. Eastman,* 21 Minn. 509; *Sanborn v. Chicago etc. R. Co.,* 16 Wis. 19; *Indianapolis v. Kingsbury,* 101 Ind. 201; *Porter v. Carpenter,* 39 Fla. 14, 21 South. 788; *Yates v. Judd,* 18 Wis. 126; *Thompson v. Maloney,* 199 Ill. 276, 65 N. E. 236, 93 Am. St. 133.

*Piles, Donworth & Howe, Charles H. Farrell,* and *Charles S. Gleason,* for respondent.

HADLEY, J.—The appellant City of Seattle, through its co-appellants constituting the board of public works of said city,' issued to the respondent a building permit granting leave to erect a building in said city. The permit was afterwards withdrawn, as far as it related to a portion of the land upon which respondent sought to build. This action was then brought to procure a mandatory injunction commanding appellants to forthwith cancel the revocation of the permit, and to issue another granting leave to erect the building upon the premise as described in respondent's ap-

plication. The prayer of the complaint also asks that, after such new permit shall have been issued, the appellants shall be perpetually enjoined from in any manner interfering with respondent in the erection of the building upon the said premises.

The controversy arises over a dispute as to the ownership of a strip of land thirteen and one-half feet in width adjoining the westerly line of lot 1, block 2, of Maynard's plat of the town, now city, of Seattle. The city claims that this strip is a part of a public street. Respondent disputes this, and alleges that it is the owner of the land, and that the same is not now, and never was, in a public street. This dispute is made an issue in the pleadings, and the complaint asks that respondent's title and possession shall be quieted as against appellants, and that they shall be perpetually enjoined from setting up any claim of title or right of possession to said premises. The cause was tried before the court without a jury, findings of facts and conclusions of law were made, and judgment was entered thereon to the effect that respondent is the owner in fee simple of the premises in dispute, that its title thereto is quieted as against appellants, and that the injunctive relief sought by respondent is granted. This appeal is from said judgment.

It is assigned that the court erred in making the following portion of its third finding of facts: "and by said plat the said Maynard did not intend to dedicate to the public anything west of said lot one (1), block two (2)." To make clear the contention under this assignment of error it is necessary to review somewhat the appearances as disclosed by the plat originally filed by Maynard. Said lot 1, block 2, is in the extreme western tier of lots as shown upon said plat. The plat shows that these lots extend into the waters of Elliott Bay, some being wholly and some partially

covered by water at ordinary high tide.  Said lot 1, block 2, is wholly below the line of ordinary high tide, which line crosses the said block about the middle thereof, and extends in a northerly and southerly direction.  It is conceded that said lot as platted, and also the strip in dispute in front of it, lie wholly within the patent line of the Maynard donation claim.  By virtue of the disclaimer in the state constitution, as heretofore frequently held by this court, the tide land within the patent line became originally a part of the donation claim.  The Maynard plat was made to cover lands within said donation claim.  Lines are drawn upon the plat to indicate the west boundary of the lots and blocks, but the streets running in an east and west direction are not closed by lines at the westerly limit of the plat.

No street is designated upon the plat as being to the west of, and adjoining to, the row of lots and blocks above mentioned; but appellants reason that the intention to dedicate a street there may be inferred from the fact that, inasmuch as westerly boundary lines are designated for the lots and blocks and no lines there indicate the termini of the streets running east and west, it was therefore intended that the streets should continue beyond the line of the lots and blocks, and should connect with another street running parallel with, and abutting upon, the westerly line of the lots and blocks.

This argument of appellants is urged as being emphasized by a further indication appearing upon the plat.  The eastern portion of the plat is wider than the extreme western portion.  Three rows of blocks on the southerly side of the plat extend but little more than half the distance of the full length of the plat on the north.  At the west end of said shorter portion of the plat, a continuous line is drawn, which bounds the lots and blocks, and closes the streets

running east and west at that place. It is therefore urged
that by drawing the line across the streets in that portion
of the plat, the intention to close them without any connec-
tion to the west is clear, and that the absence of such a
line at the further westerly extremity of the plat indicates
an intention to leave the streets open to connect with another
running at right angles to them. Upon the other hand,
respondent contends that, since across the extreme side of
the plat a street is designated both by boundary line and by
name, the absence of such designation on the west, either
by boundary lines or by name, shows an intention not to
dedicate a street on the west side of the plat.

While the intention of the person making the dedication
is to be determined largely from what appears upon the
plat, yet resort must also be had to the law regulating the
filing of plats, and the intention must be determined from
what the plat shows in connection with requirements of law
necessary to a dedication. The Maynard plat shows that
it was executed May 23, 1853. The territory now com-
prised by this state was, prior to March 2, 1853, a part of
the then territory of Oregon, the act of congress creating
the territory of Washington having been passed on said
date. The new territory was, however, not organized at the
time the Maynard plat was filed, and the first session of the
territorial legislature did not convene until February 27,
1854. The plat was therefore governed by the laws of
Oregon territory, as they existed at the time it was filed.
The session laws of that territory for 1850-51, pages 260,
261, contain an act "in respect to the recording of town
plats." That law was in force when the Maynard plat was
filed. Section 1 of the act is as follows:

"Any person or persons, his, her, or their legal represen-
tative, who may hereafter lay off any town within this
territory, shall, previous to the sale of any lots in such

town, cause to be recorded in the recorder's office of the county wherein the same may lie, a correct copy of the plat of said town, with the public grounds (if any there be), streets, lanes, and alleys, with their respective widths properly marked, and the lots regularly numbered in numerical order, and the size of the lots marked by reference to the plat of said town."

It will be observed that the section requires that streets with their respective widths shall be properly marked. This was not done by the dedicator of the Maynard plat, at the place where appellants claim he intended to dedicate a street. A blank space is left there, without any marked boundaries or any designation by name. Other streets and alleys are distinctly marked by boundary lines, and the streets also by names. Maynard must be presumed to have known the requirements of the law, and, inasmuch as he so carefully complied with it in designating streets and alleys at other places, and with as much apparent care omitted to designate one at the place in question, we think, when the law and the plat are considered together, it should not be held that he intended to dedicate a street which he in no way designated.

Appellants cite a number of cases which they urge in support of the rule that, in the interpretation of plats, force must be given to the lines appearing thereon, and that they are often as potent to convey the intention of the dedicator as the written words. The rule urged is well recognized, and is founded in good reason. But applying it to the plat in question, it appears to us that the lines made upon this plat silently say that Maynard intended to designate the streets which he indicated by lines as well as by names, and that he did not intend to dedicate more. We do not think it can be concluded, because a line was drawn closing streets at one place, and such does not appear as

closing others at another place, that it follows from such fact that an intention existed to dedicate a street, merely for the reason that it would connect at right angles with the others; and especially is this true in view of the statutory requirements that the street intended to be dedicated must be marked.

Appellants rely largely upon the case of *Webb v. Demopolis,* 95 Ala. 116, 13 South. 289, 21 L. R. A. 62. In that case the platted land was in front of the Tombigbee river, and the contention was over an irregular space immediately in front of the margin of the stream. That space was, however, designated upon the plat as "Arch street," thus showing clearly an intention that a street should exist there. It is contended, however, by appellants that the opinion shows it would have been held to be a street even though it had not been so designated. The opinion does proceed argumentatively to state that all the plats of the city of Demopolis had recognized the marginal front of the river as a continuous street, but the fact remained that the somewhat irregular space following the river had actually been designated upon the plat then under examination as a street, and that was the conclusive fact which showed an intention to dedicate it as such. An intention to dedicate will not be presumed, and a clear intention must appear. *Shell v. Poulson,* 23 Wash. 535, 63 Pac. 204; *Tinges v. Baltimore,* 51 Md. 600; *Shellhouse v. State,* 110 Ind. 509, 11 N. E. 484; *Holdane v. Trustees etc.,* 21 N. Y. 474; *Fisher v. Carpenter,* 36 Kan. 184, 12 Pac. 941; *Chicago v. Van Ingen,* 152 Ill. 624, 38 N. E. 894; *Emmons v. Milwaukee,* 32 Wis. 434; *Hogue v. Albina,* 20 Ore. 182, 25 Pac. 386, 10 L. R. A. 673.

From anything appearing upon the Maynard plat, which is the evidence before us, on the subject of the original dedication, we shall not, for the foregoing reasons, disturb the

finding of the trial court that Maynard did not intend to dedicate to the public anything west of lot 1, block 2.

Appellants contend, however, that if the strip of land in question was not originally dedicated by the Maynard plat, it has since been dedicated by permitting it to be uninterruptedly used by the public as a highway. It is therefore assigned that the court erred in finding, that for more than twenty years prior to the commencement of this action, the respondent and its predecessors and grantors have together been exclusively in possession of the disputed tract, under color of title; that no part thereof has ever been used by the public as a street or alley against the will of respondent, its predecessors, and grantors; and that the public or the city of Seattle never acquired any interest in said premises or any part thereof. It was further found that during the possession of respondent, its predecessors, and grantors, the said premises were occupied by piles with planks laid thereon, which were constructed by respondent, its predecessors, and grantors.

We think the findings are sustained by the evidence. During the time mentioned, respondent had occupied the land immediately adjoining the strip in question with its railway tracks and depot; and, leading from said lot 1, it had, together with its predecessors, and grantors, maintained a roadway westward over the waters of Elliott bay to a private wharf, which it owned and operated. The disputed tract was, it is true, used by the public, but for the purpose of gaining access to the railway tracks, depot, and wharf of respondent, all of which were private property. The use was permitted by respondent in connection with the prosecution of its business as a railway and wharfage company. Such use was private in its nature, was not inconsistent with the assertion of private ownership, and did not of itself establish adverse usage by the public. We

think no assertion or conduct of respondent is shown which
is inconsistent with the idea of ownership or of mere per-
missible use.

It is pointed out by appellants that respondent applied
to the city for a franchise to build its railroad within the
city, and that its application included the land in contro-
versy. We do not think that fact can be said to be an ad-
mission that it was not the owner of this strip. The entire
route of the proposed line was necessarily shown, and the
privilege of operating the proposed line under restrictions
within the city was involved, as well as the right to build
upon certain streets. The substructure for this planking
and roadway over this land was built and maintained by
respondent at its own expense. There is evidence to the
effect that the city street officials had asked that the plank-
ing be repaired. But, in any event, respondent kept it
continually repaired, and maintained it at its own expense
over the disputed strip, thus furnishing a roadway to its
private property.

"And such we think is the voice of authority generally
that, before an easement can be implanted upon land, the
property of a citizen, where such right rests upon pre-
scription, the user by the public must have been uninter-
rupted, unqualified, and adverse to the rights of the owner
of the soil." *Shell v. Poulson, supra.*

In *Megrath v. Nickerson,* 24 Wash. 235, 240, 64 Pac.
163, the court said:

"It was not a free and untrammeled use, but was a use
which was interrupted by unambiguous acts of ownership.
Neither does the testimony show that the use was adverse.
On the contrary it does show that it was permissive and
subordinate to private ownership."

We think it is equally established in the case at bar that
the use was "permissive and subordinate to private owner-
ship" within the principles enunciated in the following

cases: *Irwin v. Dixon,* 9 How. 10, 13 L. Ed. 25; *City of Eureka v. Croghan,* 81 Cal. 524, 22 Pac. 693; *Cooper v. Monterey County,* 104 Cal. 437, 38 Pac. 106; *Nelson v. Madison,* Fed. Cas. No. 10,110; *Coburn v. San Mateo County,* 75 Fed. 520; *Dicken v. Liverpool etc. Co.,* 41 W. Va. 511, 23 S. E. 582; *Lewis v. City of Portland,* 25 Ore. 133, 35 Pac. 256, 22 L. R. A. 736, 42 Am. St. 772. In the last named case the language of the court, at pages 154 and 155, is a comprehensive statement of the principles applied here, and is as follows:

"A dedication of land to the public use rests on the intention or assent of the owner. As it is purely a question of intention, the evidence of it, when resting in parol, must be clear and satisfactory, and indicate a positive and unmistakable intention to devote the property to public use. All the authorities agree that the acts and conduct of the owner, when relied upon to show the dedication of his property, must be deliberate and unequivocal, manifesting a clear intention to abandon such property to the public use. The burden of showing it rests on the defendant. The security of titles requires that the evidence of dedication, when depending on parol proof, should be of such a deliberate and decisive character as to leave no doubt of the owner's intention. Hence, the rule is well settled by numerous authorities that before there can be a valid dedication there must have been an actual intention, clearly indicated, by deliberate and unequivocal words or acts, to dedicate the property to the public."

We shall therefore not disturb the court's findings, which are to the effect that the land in question has not been used by the public adversely to respondent's claim of ownership.

A number of conveyances were introduced in evidence in support of respondent's claim and color of title. Appellants assign as error that a deed from David S. Maynard and wife to Angus Mackintosh was admitted. It is alleged that the description in the deed is too indefinite to convey

title. The language relied upon by respondent is the following:

"All our right, title and interest in and to all lots, tracts, pieces, parcels, blocks, or portions of land in, upon, or about that portion of the city of Seattle as laid out by David S. Maynard and known as David S. Maynard's Town of Seattle, excepting . . ."

Certain described lots and blocks are then named as included in the exception. The language is general, but it was manifestly the intention to convey all lands of the grantors "in, upon, or about" that portion of Seattle covered by the Maynard plat except the lots and blocks named. The description appears to be broad enough to include the strip of land in question. It lies immediately adjoining the west line of the Maynard plat, and within the patent line of the Maynard donation claim. It is therefore included in the general description, since it is not within the exception, and can be ascertained with certainty as being a part of the grantor's lands "about" the Maynard plat. In construing descriptions effect must be given to the intention of the parties, and to that end, that shall be considered certain which can be made certain. 4 Am. & Eng. Enc. Law, pp. 793, 794.

We believe the deed was properly admitted as evidence of color of title, and we think, from all the evidence in the record, that respondent and its grantors held uninterrupted possession of the disputed land, under claim and color of title, for more than twenty years prior to this action.

The judgment is affirmed.

ANDERS, DUNBAR, and MOUNT, JJ., concur.