FRANK FULLER

*v.*

THE TOWNSHIP OF BELLEVILLE et al.

[Filed June 9th, 1904.]

1. The mere omission of a municipality to assess land dedicated by the owner for a street, for benefits for improvements of a neighboring street, is not evidence of such an acceptance by the municipal authorities as to make it a public street.

2. Equity will restrain a municipality from carrying out a drainage scheme which will collect a large quantity of surface water and discharge the same on lands of an individual in such quantities as to practically render the lands valueless.

On bill for injunction.

*Mr. James Trimble,* for the complainant.

*Mr. Egbert J. Tamblyn,* for the defendants.

BERGEN, V. C.

The complainant is the owner of a tract of land in the township of Belleville, in the county of Essex, lying east of Linden avenue and north of Joralemon street, which he has caused to be laid out in lots upon a map, showing a proposed street fifty feet in width, designated thereon as Essex street, the southerly line of which commences three hundred feet northerly from the north line of Joralemon street, and runs from Linden avenue easterly to Washington street, nearly all of the lots adjoining Essex street having frontage on that street. One lot on the southeast corner of Linden avenue and Essex street has been sold ·by the complainant, and in the deed of conveyance is described as adjoining Essex street. No other lots appear to have been sold from the tract, nor does it appear that the

dedication of Essex street has been accepted or ratified by the public authorities beyond an omission to assess benefits against that part of it adjoining Washington street, when the latter street was improved. This omission cannot be held to be, as defendants insist, evidence of that formal ratification or acceptance, required of a municipal corporation to subject the municipality to the burden of its repair and maintenance, or to confer upon the public authorities the right to use it as a conduit for the discharge of an unlimited quantity of surface water collected from the neighboring streets and carried there by artificial means for that purpose. The dedication, so far as the public authorities are concerned, confers no rights and imposes no burdens without a formal act of acceptance, or such a continued public user as would estop the owners of the lands adjoining from withdrawing the dedication. *Pope* v. *Union, 18 N. J. Eq. (3 C. E. Gr.) 282; New York and Long Branch Railroad Co.* v. *South Amboy, 57 N. J. Law (28 Vr.) 259.*

It appears in the bill of complaint, and the affidavits verifying the same, that about twenty years ago the township of Belleville began to open and grade a number of streets to the south and west of the complainant's property and on higher ground, and has since continued the making of such improvements; that the streets running north and south so opened are Washington street, to the east of the complainant's land, and Linden avenue and Hornblower avenue to the west, the latter streets being on much higher ground than the complainant's property; that another street so opened and running east and west, intersecting the three last streets named, is Joralemon street. It further appears that previous to the opening of these streets there was a well-defined depression in the earth, following generally the course of Essex street, which received such of the surface water falling on the higher lands as would, by the natural configuration of the land, drain into it, and when so received flowed along the depression through what is now Essex street to a point about eight hundred feet westerly of Washington street, where it emptied into a stream, which at that point had its rise in a living spring. After these improvements were made most of the surface water col-

lected in Hornblower avenue and, as it is alleged, other streets, was carried easterly through Joralemon street, it appearing from the answer and affidavits annexed that the water collected by a gutter along the north side of Joralemon street entered into Linden avenue, and, following that street, found its way into the depression in Essex street and was carried away through that channel; but the bill of complaint shows, and it is not denied in the answer, that the surface water, as discharged into Joralemon street, is collected over an area requiring about thirty-five thousand feet of gutters, and that the quantity of water thus carried into Joralemon street, and which now flows along the course of that street to Washington avenue, is in times of heavy rains very great, resulting in the tearing up of Joralemon street. So that I think it safe to assume that by far the greater quantity of water collected and brought into Joralemon street has for the past fifteen years been carried through Joralemon street and discharged into Washington street, and that, as charged in the bill of complaint, the purpose of the township committee in diverting the water and carrying it to Essex street, as I shall presently describe, is to prevent this great quantity of water from flowing down Joralemon street, as it now flows, and to thus preserve that street from the great washing it is now subjected to. If the volume of water now flowing on Joralemon street is of sufficient quantity and flows in such force as to tear up the stone gutters on Joralemon street, as it does, it cannot be consistently argued that such an unusual condition of affairs existed prior to the artificial constructions and that all of that water formerly found its outlet through Essex street, for its force and volume would have created in that unimproved street a deep chasm, a condition which it is not pretended now exists. The allegation of the complainant is that the defendants, the township committee, have adopted a scheme of drainage under which the surface water collected in all of the streets and now discharged upon Joralemon street is to be arrested at the corner of Joralemon street and Linden avenue by a catch basin and from thence carried in an underground drain along the easterly side of Linden avenue until it reaches

Essex street, at which point the drain is to turn into Essex street, terminating a short distance from Linden avenue, where all of this vast quantity of water is to be discharged into the old depression, and that in order to make this feasible it is intended to deepen the old water course. The result, as the complainant says, of the carrying out of this scheme will be to cast all of this surface water not only on his land within the limits of Essex street but also upon certain of his lots, to their great damage, and in times of heavy rains would flow over said lands and thus render them practically valueless. The answer of the defendant does not seriously dispute most of the allegations of the complainant; it does deny the charge that the greater part of the surface water collected on Joralemon street follows the line of that street to Washington avenue, but the proposition to build an artificial waterway to carry the water from Joralemon street to Essex street would seem to indicate that the water flowing down Joralemon street was too great in quantity to be taken care of on the surface of that street.

As this case now appears, it is the intention of the defendants to gather together large quantities of surface water which have been forced out of their natural channels by the necessary improvement of the locality into Joralemon street, along which it now flows, and to carry it by artificial means to, and empty it upon, the complainant's property, a proceeding which I conceive to be contrary to his rights. I am satisfied that the discharging of this water into Essex street will overflow and injure lands of the complainant not within the lines of Essex street, and that even if they have the right, because of complainant's dedication of Essex street, to consider it as a public highway, with the power to grade or improve, that right will not permit the carrying out of a scheme for the collection and diversion of surface water in such a manner as to certainly cast it upon lands of an adjacent owner. *Field* v. *West Orange, 36 N. J. Eq. (9 Stew.) 118; Scule* v. *Passaic, 47 N. J. Eq. (2 Dick.) 28.* I also find that, as this case now stands, no such acceptance of Essex street by the public authorities has been shown as will justify them in using the lands within the street limits as a receptacle for sur-

face water which would not naturally converge at that point, and which is collected and carried to the place of discharge by artificial means; if the public authorities desire to avail themselves of the dedication they must manifest it by some formal act and assume the burdens and responsibilities usually following the appropriation of private property for public use as a street. To say to a landowner, you have dedicated your property to a public use, we do not accept it, but we propose, by a system of drainage, to collect and throw upon your land all the surface water which it is inconvenient or expensive to dispose of otherwise, is certainly inequitable. Upon final hearing, and after a fuller disclosure of the facts have been had, a different state of affairs may appear, but for the present I am of opinion that defendants should be restrained, and I will therefore advise an order for injunction. The restraint will be limited to enjoining the defendants from carrying out so much of the proposed drainage scheme set forth in the bill of complaint, and admitted in the answer, as will arrest and cast upon Essex street or upon the lands of the complainant any of the surface water which would flow down Joralemon street unless prevented by the construction of the basins and drains as described in the bill of complaint and which the defendants admit they intend to build.