[No. 7467.    Decided March 29, 1909.]

FRANK W. OSBORNE *et al., Appellants*, v. THE CITY OF SEATTLE *et al., Respondents.*[1]

DEDICATION—PLATS—ESTABLISHMENT OF STREETS—INTENT OF PLATTOR—EVIDENCE—SUFFICIENCY. Where an unknown meander line cut northeasterly across a plat, leaving unplatted triangular parcels between the meander line and the north and west sides of blocks at the outer edge of the plat, dedicated streets extend to the meander line along the sides of the outside blocks, which would otherwise have no street frontage for access, although there are no lines defining the opposite street boundaries; especially where such street extensions were staked out on the ground and not assessed for taxation.

Appeal from a judgment of the superior court for King county, Albertson, J., entered December 6, 1907, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, dismissing an action to restrain a city from improving a strip of land as streets. Affirmed.

[1]Reported in 100 Pac. 850.

*McClure & McClure,* for appellants.

*James E. Bradford* and *Scott Calhoun,* for respondents.

MOUNT, J.—This action was brought by the plaintiffs to restrain the city of Seattle from improving as streets a strip of land eighty feet in width to the west of block 6, and, also, a strip of land eighty feet in width north of block 2, as shown on the accompanying plat.

The plaintiffs claim a triangular piece of ground to the west of block 6 and north of block 2, by mesne conveyances from the patentees of the United States. The defendants claim that Government street extends north, eighty feet in width, to the west side of block 6, and that Elliott street extends west, eighty feet in width, on the north side of block 2. The question in the case is whether Government street extends further north than the north line of blocks 2 and 5, and whether Elliott street extends west further than the west line of blocks 5 and 6. On the trial of the case to the court without a jury, the court found:

"That there now exists, and during all the times in these findings mentioned there have existed, lawful highways or public streets eighty feet in width and embracing within the limits and boundaries thereof all of the property above described, which said highways and public streets were at all the times herein mentioned, and now are, for the use and travel of the city of Seattle and the public generally. That all of the property herein described, of which plaintiffs alleged they are the owners, lies wholly within and upon the limits and boundaries of Andover street (formerly Elliott street) and Sixth Avenue South (formerly Government street), as located and designated on and by said plat, and as actually dedicated and as actually laid out upon the ground, and that said plaintiffs and each of them are without any right, title or interest whatsoever therein or thereto."

From this finding a judgment followed, dismissing the action. The plaintiffs appeal.

While several errors are assigned, the case necessarily turns on the finding above copied. The facts are as follows:

Plate of

# SOUTH SEATTLE.

alleys 16 ft.

Streets 60 ft.
lots 40 by 120
Fractional lots 76 1 and 8 in Blocks
No. 2-3-4-10-11 and are 67½ by 120

Filed for Record April 18th 1889
River Lot 3 in in 123 1889  G. Kellogg Addition

20 21
Hanford Street
Horton Street
19 22
Hinds Street
18 Cobley 23
Lyons Street
17 24
Orleans Street
16 25
Court Street
(7th Ave S.)
15 26
Yesler Street
1 14 27
Market Street
5 9 13 28
Saratoga (Maynard)
Elliott (Andover) Street
6 9 12 29
Government (6th) Street
Denny Street
3 4 10 11 30
Lincoln Street
Liberty Street
Orleans Street
Grant Street

On April 16, 1869, Catherine Ott, who was the owner of the land, caused to be recorded in the auditor's office of King county the "Plan of South Seattle," which is copied above. It is admitted that this platted land lies wholly within the limits of the John J. Moss Donation claim, excepting where the blocks projecting to the northwesterly cross the meander line of that claim. This meander line, which became under the state constitution the boundary line of the claim, cut off a small fraction of lot 5, block 1, and running thence northeasterly cut off the extreme northwesterly corner of lot 7, block 2, and a small fraction of lot 7 in block 6, and also a fraction of lot 7 in block 7. The meander line is not shown on the plat. The lots, blocks, and streets along this meander line are tide lands, part of the time under water, and when not under water are mud flats. After the plat was filed and recorded, lots and blocks were sold by reference to it. Thereafter the names of certain streets shown upon the plat were changed by city ordinances, as follows: Government street was changed to Sixth avenue south; Sansome street to Maynard avenue; Liberty street to Seventh avenue south, and Elliott street to Andover street. When the land was surveyed for platting, the streets were run to conform to the streets already existing in plats on the north and west of the tract, and the streets were staked out upon the ground eighty feet in width to the meander line. Since the filing of the plat, the land in question has never been assessed for taxes or placed upon the tax rolls. The validity of the plat is admitted, and it is also admitted that whatever streets appear to have been dedicated by the plat are dedicated streets.

Appellants rely largely upon the case of *Columbia & Puget Sound R. Co. v. Seattle*, 33 Wash. 513, 74 Pac. 670, for a reversal of this case. In that case the dispute arose over a strip of land thirteen and one-half feet in width, lying to the west of block 1, lot 2, of Maynard's plat of Seattle. The city claimed the strip as a part of the street west of that lot. In that case lot 1 of block 2 was one of the extreme western

tier of lots as shown upon the plat. That plàt as platted and also the strip in front of it were wholly within the line of Maynard's claim. No street was designated upon the plat to the west of this tier of lots. Under these facts, which are all stated in the opinion, it seems clear that the western line of the westernmost lots would be the limit of the dedication, and the fact that the streets running east and west were not closed by a line drawn across them would not indicate an intention of the dedicators to continue streets beyond the west line of the lots, and the fact that there was no designated street running north and south along the western tier of lots shows that there was no intention of the dedicator, in view of the statute, to dedicate a street there, even though the dedicator was the owner of a strip of land on the west of the plat sufficient for a street.

We think that case was correctly decided. But it does not necessarily control this, for several reasons. First, there was no street at all designated upon the west of the plat. The streets running east and west extended to the westernmost part of the plat and no further. In this case, streets are designated, and must extend to the extreme parts of the plat, or several of the lots will have no street frontage at all. For example, if Elliott street extends west only to the west line of blocks 5 and 6, and Government street extends north only to the north line of blocks 2 and 5, then lots 7, 8, 9, 10, and 11 of block 6 have no street frontage at all, and the only access would be through an alley sixteen feet wide. The same would be true of the same numbered lots in blocks 2 and 7, and lots 5, 6, 7, and 8 in block 1 would be altogether isolated with no means of access whatsoever. It is not to be supposed that land would be platted into lots and blocks without any means of access. Again, the evidence in this case shows that the streets were actually staked off upon the ground, and have always been considered streets, although not used by reason of their unimproved condition. And further, the fact that the land in question has never been assessed for taxation, in-

dicates that it has been held as public property both by the city and the original owner of the land.

Appellants also rely upon *Polson v. Aberdeen*, 44 Wash. 155, 87 Pac. 73, and *Meacham v. Seattle*, 45 Wash. 380, 88 Pac. 628. In the former case we held that the plat and the land as staked off controlled the platted land, and that the lands lying between the platted land and the river were not included within the plat; which is, in substance, the same as was held in *Columbia & Puget Sound R. Co. v. Seattle, supra.* In *Meacham v. Seattle*, we held that a street named upon a plat was a dedicated street, and intended as such even though the same was not within the land described as platted. These cases do not, in our opinion, control the case at bar. The controlling question in those cases was the intent of the parties who made the plats. This intention is gathered principally from the plat itself; though, when the plat is ambiguous or uncertain, surrounding circumstances and even extrinsic evidence may be considered for the purpose of determining the real intention of the plattor. And this rule is recognized in each of the cases above named. The cases of *London & San Francisco Bank v. Oakland*, 90 Fed. 691; *Warden v. Blakley*, 32 Wis. 690, and *Hanson v. Eastman*, 21 Minn. 509, were cases almost exactly like the case at bar, and it was held in each of those cases that the streets were intended to extend along the platted lots, even though no marks were made upon the plats to indicate that intention. In the Wisconsin case the court said:

"We think it perfectly clear upon the face of the plat itself, . . . that Alice street extends along the south side of block 20. . . . But it is objected on the other side that if this was the intention of the proprietor he would have designated Alice street by a line south of block 20, as was done in reference to all streets upon the plat. But the circumstance, that there is no line there defining the boundary of that street, can have no such controlling effect. . . . Indeed, upon an examination of the plat itself, it seems impossible to arrive at any other conclusion than that it was

the intention of the original proprietor to have Alice street extend across Main street and along the south side of block 20."

Appellants seek to distinguish these cases by the fact that a line appeared upon the plats therein showing a triangular space, while in this case the meander line is omitted from the plat, leaving the triangular space a mere open space. We do not regard this as a distinction. While it is true that the meander line is not shown upon the plat, it is conceded that the plat extended to the meander line, and that the northwest corner of blocks 1, 2, 6, and 7 actually crossed this line by a few feet. It is clearly shown, however, that it was the intention to plat only to that line. While the line is not marked upon the plat, it is marked upon the ground, and its absence from the plat is of no special importance. Other questions are stated in the appellants' brief, but in view of the admission that the plat is a valid plat, we deem it unnecessary to consider questions which go to the validity of the plat.

We are satisfied from the record, for the reasons herein stated, that Government, or Sixth, street extends north at least to the meander line on the west side of block 6, and that Elliott, or Andover, street extends west on the north side of block 2 to the meander line at that point, and therefore, that the judgment of the lower court was right, and must be affirmed. It is so ordered.

RUDKIN, C. J., FULLERTON, DUNBAR, and CROW, JJ., concur.

CHADWICK, MORRIS, GOSE, and PARKER, JJ., took no part.