[No. 23416.  Department One.  March 4, 1932.]

John W. Mueller et al., *Appellants*, v. The City of Seattle, *Respondent*.[1]

[1]Reported in 8 P. (2d) 994.

*Carkeek, McDonald & Harris,* for appellants.

*A. C. Van Soelen* and *John E. Sanders,* for respondent.

PARKER, J.—The plaintiffs, Mueller and wife, seek injunctive relief against the defendant city, restraining it from interfering with their maintenance of their small garage building at the rear of their dwelling premises upon land which they claim to own as a portion thereof, and which the city claims as a portion of one of its dedicated, existing public streets. Mueller and wife also seek a decree quieting title in them against the claim of the city to the land in question. The cause, being of equitable cognizance, proceeded to trial upon the merits in the superior court for King county, sitting without a jury, and resulted in judgment denying to Mueller and wife relief as prayed for, from which they have appealed to this court.

Primarily, our problem is as to whether or not the strip of land lying along and within the western boundary of Crawford's Addition to Seattle became a legally dedicated public street by the execution and recording of the plat of that addition in the office of the auditor of King county in the year 1882. The plat and the endorsements thereon, as remaining of record in the office of the county auditor, are as follows:

"CRAWFORD'S ADDITION

"This plat covers lot 6 in section 29 town. 25 north range 4 east. The initial point is the ¼ stake between sections 29 and 32 and is 33 feet west of the southwest corner of block A. The streets running east and west are 66 feet wide, lots and blocks as represented on the plat.

"Know all men by these presents, that I, James Crawford, owner of the above named Crawford's Addition to Seattle, hereby declare the above plat and description of Crawford's Addition to Seattle, and hereby dedicate to the use of the public forever all these streets platted therein.

"In witness whereof I have hereunto set my hand and seal this 29th day of March A. D. 1882.

"James Crawford (Seal)

"John Leary }
"H. G. Struve } Witnesses

"Territory of Washington, County of King } ss.

"Personally appeared before me, John Leary, a Notary Public in and for King county, Washington territory, James Crawford, owner of said Crawford's Addition having fully made known to him the contents of this instrument, he acknowledged that he executed this instrument freely and voluntarily for the uses therein mentioned.

"In witness whereof I have hereunto set my hand and seal this 29th day of March A. D. 1882.

"John Leary,

"Notary Public within and for King Co., W. T. (Seal)

"No. 855.

"Filed for record at the request of John Leary, March 29th A. D. 1882 at 30 min. past 3 P. M. and recorded in Vol. 1 Plats page 189 Records King Co., W. T.

"S. C. Harris, County Auditor."

The endorsement across the face of block C of the plat was not there when it was originally executed and recorded. That endorsement is but a reference to the replatting of that block several years later, and is of no consequence in our present inquiry.

In the year 1922, Mueller and wife acquired title to the south half of lot 6 of block D of the addition, since which time they have continued to reside in the dwelling house thereon. Mueller and wife claim title to a tract of land outside of and abutting upon the western end of the south half of lot 6 of block D, approximately ten feet wide east and west and twenty-five feet long north and south, which tract the city claims to be a part of a public street dedicated by the execution and recording of the plat of Crawford's Addition.

In the year 1928, Mueller and wife constructed a garage, ten by sixteen feet in area, largely, if not entirely, upon that tract. The city authorities threatened to remove the garage, in so far as it extends west of the west line of lot 6 of block D. Thereupon Mueller and wife commenced this action.

It is first contended in behalf of Mueller and wife that the city has no right to use for street purposes any portion of the strip of land west of the west lines of the blocks of the addition, because that strip was not dedicated to the public for street purposes by the

execution and recording of the plat of the addition. To support this contention, there is called to our attention § 2328 of the territorial code of 1881, now Rem. Comp. Stat., § 9288, reading as follows:

"Any person or persons, who may hereafter lay off any town within this territory, shall, previous to the sale of any lots within such town, cause to be recorded in the recorder's office of the county wherein the same may lie, a plat of said town, with the public grounds, (if any there be,) streets, lanes and alleys, with their respective widths properly marked, and the lots regularly numbered, and the size stated on said plat."

It is argued that the plat fails to comply with this statute, in that the strip of land is not expressly named as a street, and in that its width is not shown upon the plat; and that therefore the plat does not evidence a dedication of the strip as a street.

As to the failure to expressly designate upon the plat the strip as a street, the statute does not, in terms, require streets to be expressly designated in words, letters or figures upon the plat. This, it seems to us, renders it plain that the mere absence of words designating a particular strip upon the plat as a street does not necessarily mean that the platter thereby fails to express his intent to dedicate such strip as a street when the plat and endorsements thereon otherwise evidence an intent to so dedicate such a strip as a street.

As to the failure to show the width of the strip as a street on the drawing of the plat, it is to be noticed that the dedication language endorsed on the plat is in part that: "The initial point is the ¼ stake between sections 29 and 32 and is 33 feet west of the southwest corner of Block A." This plainly shows that the strip is thirty-three feet wide at its south end. True, its side lines, as drawn upon the plat, apparently converge and come nearer together at its north end, and there

is not any stated width of the strip at its north end; but subsequent surveys, made by the city, show the strip to be 17.74 feet wide at its north end. That width, while not expressly stated upon the plat or in its endorsements, was capable of being mathematically determined from the ascertainable width of the northern end of the government lot 6 and the expressly designated feet figures showing the length of block D of the addition. This, we think, constituted a substantial compliance with the statute in showing the width of the strip as a dedicated street, if its dedication be otherwise sufficiently evidenced.

We have these outstanding facts pointing to an intention on the part of Crawford to dedicate to the public as a street the strip of land in question.

(1) The evidence shows that government lot 6 is composed of a strip of land some 243 feet wide east and west and approximately one-quarter of a mile long north and south, lying between the west line of a donation claim and the north and south center line of section 29; that is, that government lot 6 is the fraction of the southwest quarter of the southeast quarter of section 29, left by the encroachment of the donation claim upon that government quarter section.

(2) Crawford says in his dedication language endorsed upon his plat that it covers that lot. Of course, that means that the plat covers the whole of that lot.

(3) The unbroken line upon the plat running north from the south ¼ corner of section 29, Crawford manifestly intended to represent the west line of the plat and the west line of government lot 6.

(4) While the strip lying between that line and the west lines of the blocks of the plat of the addition is not named as a street or alley, or its character otherwise designated in words upon the drawing of the plat, it is of suitable width as a street or alley and is open

at all of its intersections and contacts with all of the named streets of the addition.

(5) If the strip was not dedicated to the public as a street by the execution of the plat, then at least lot 7 of block A, lots 6, 7, 8 and 9 of block B, and lots 6, 7, 8 and 9 of block C were in the making of the plat absolutely cut off from all street ingress and egress. This is also true of lots 1, 2, 3, 4, 5 and 6 of block A and lot 6 of block D, unless those lots at the time of making the plat had access to streets outside of the addition, as to which we are not advised.

These facts, we think, evidence an intent on the part of Crawford to dedicate the strip between the west lines of the blocks of the addition and the west line of the addition, that is, the west line of the government lot 6, as a public street.

Of course, the intention of the platter is the controlling consideration in determining what portions of his platted land he effectually dedicates to the public for street purposes. Evidence of the platter's intention in that regard, however, does not fail by his mere failure to express his intention in words. In the text of 18 Corpus Juris 109, the applicable rule, in so far as it may be stated in general terms, is, we think, well stated as follows:

"Plats by which dedications are made are to be interpreted by the court as any other writing would be, and are to be construed as a whole in order that the intention of the party may be ascertained, and every part of the instrument be given effect; no part of the plats are to be rejected as meaningless, if it can be avoided; and lines as well as words are to be considered."

In 4 McQuillin on Municipal Corporations (2d ed.) 533, that learned author says:

"In some jurisdictions it seems to be held that a space left blank on a plat, with no designation of its

purpose, does not show an intention to dedicate such space to public use. Under some circumstances, however, dedication may be accomplished without the designation eo nomine of a space as a street, highway, alley, or other public place; in other words, though a map or plat does not designate eo nomine the street, highway or alley space in the area platted, such designation may as certainly appear from the situation created by the relative location of blank spaces and lots or blocks, and from the purpose to which the lots or blocks are expected to be devoted, and from the lines and courses indicated by the map as they relate to lines of the subdivisions made.''

Our own decision in *Osborne v. Seattle*, 52 Wash. 323, 100 Pac. 850, lends support to our conclusions here reached, though the facts there involved are not wholly analogous to the facts in this case. In that case, there was involved the question of dedication of land as streets, bordering certain lots of the plat in question. The platter owned land southeasterly of and up to a shore line running northeasterly and southwesterly. He platted his land into square blocks with intervening named streets running north and south and east and west. This left apparently unplatted triangular tracts along the shore line. There were no lines showing any separation by streets of those unplatted tracts from the opposite blocks. So if there were platted streets on the north and west of those blocks, it was only by virtue of the inferential intent of the platter to make the named streets extend along the north and west fronts of those blocks.

It was in that case held that the plat evidenced the dedicator's intention to dedicate streets fronting those blocks on the north and west as projections of the named streets, though no lines appeared upon the plat opposite those blocks. If the streets were not so dedicated, then a number of the lots fronting east and

north would be entirely without street access. In holding that the streets were so dedicated by the platter, Judge Mount, speaking for the court, observed:

"It is not to be supposed that land would be platted into lots and blocks without any means of access."

This seemed to have been one of the controlling considerations, in view of the named streets opening into the claimed extensions thereof, leading the court to reach the conclusion it did.

Counsel for Mueller and wife cite and rely upon the decision of our territorial court in *Robinson v. Coffin*, 2 W. T. 251, 6 Pac. 41. That decision is readily distinguishable from our present problem. In that case, the strip of land claimed to have been dedicated as a public street was entirely enclosed by unbroken lines upon the drawing of the plat, and was designated by the letter "C", as some other enclosed tracts were so designated; other enclosed tracts being designated by numbers. It did appear that the strip in question would be quite suitable to street uses and as such would furnish street access to lots that otherwise would not have street access. It would seem that that plat plainly evidenced the intention of the platter not to dedicate the strip in question to the public as a street. The strip here in question is not, as we have seen, enclosed by solid lines upon the drawing of the plat, but its lines are open at all of its intersections and contacts with the named streets of the addition.

It is further contended in behalf of Mueller and wife that the city should be held to be estopped from claiming, as part of the strip, as a dedicated street, any portion thereof occupied by the garage. It seems plain that they could not acquire title thereto by mere adverse possession. *West Seattle v. West Seattle Land and Improvement Co.*, 38 Wash. 359, 80 Pac. 549. This, we understand, is conceded.

The facts which may furnish some ground for arguing that the city should be so estopped are as follows: In January, 1923, Mueller and wife applied to and obtained from the city department of public buildings a permit to construct their garage upon and at the rear of their dwelling property so as to have what they termed in their application "an alley entrance" thereto, describing their dwelling property by its street number upon a street to the east which had been acquired by the city some years previously by condemnation. The contemplated cost of the garage, according to their application for the permit, was stated therein to be fifty dollars, without any floor therein, thus manifestly contemplating a very inexpensive, if not merely temporary, structure. It was built accordingly, as the photograph thereof introduced in evidence indicates.

Prior to that time, since about the year 1903, Mueller and wife and their grantors had, we shall assume, continuously cultivated as a garden the land upon which their garage was constructed, it being enclosed by a fence on the south, west and north. During later years, the fence seems to have become in a bad state of repair and had openings therein.

This enclosing and cultivation of the land and the building of the garage is the only ground of estoppel upon which the claim of Mueller and wife rests as against the city. In the text of 4 McQuillin on Municipal Corporations (2d ed.) 250, we read:

"While the doctrine of equitable estoppel is sometimes invoked in what are termed 'exceptional cases,' it is always applied, and wisely so, with much caution to municipal corporations in matters pertaining to their governmental functions. And where applied, something more than the mere possession of a street or a part thereof by third persons is required. In addition to possession, such third person must have

erected structures or improvements on the street of such character that it would entail pecuniary loss on him if the public should assert its right to repossess itself of the premises."

The decision of the Illinois supreme court in the case of *Close v. City of Chicago,* 257 Ill. 47, 100 N. E. 215, is authority for the view that the granting of the permit by the city, even if construed as a permit to build upon the strip in question, which we have found to be a dedicated street, would not work an estoppel against the city; this by reason of want of power in the city officers to grant any such permit.

We are of the opinion that Mueller and wife have not acquired by way of estoppel any rights as against the city to the dedicated strip.

Some further contention is made that the westerly line of lot 6, block D of the addition, is six feet farther west than as claimed by the city, and thus half or more of the garage is actually upon the dwelling property of Muller and wife, consisting of the south half of lot 6. There may be room for so arguing, in view of some of the surveys made in years past in that neighborhood. However, we think the evidence calls for the conclusion that the city's surveys correctly established the line between the dedicated strip and block D as claimed by the city, which apparently show the garage to be largely, if not wholly, upon the dedicated strip.

We conclude that the judgment must be affirmed. It is so ordered.

TOLMAN, C. J., MITCHELL, BEELER, and HERMAN, JJ., concur.