[No. 28658.    Department One.    January 26, 1943.]

ADDISON FORRESTER *et al., Respondents,* v. JAMES R. M. FISHER *et al., Appellants.*[1]

'Reported in 133 P. (2d) 516.

*Henry Arnold Peterson,* for appellants.

*Reuben C. Carlson, Jack H. Jaffe,* and *Ralph M. Rogers,* for respondents.

MILLARD, J.—This action was instituted to quiet title in plaintiffs, owners of lots 3 and 4 in block 12 of Law's addition to Tacoma, to a strip of land, to restrain defendants from trespassing upon that strip, and to recover for past trespasses upon that land by defendants. Trial of the cause to the court resulted in entry of decree and judgment in harmony with findings in favor of the plaintiff. Defendants appealed.

The facts are as follows: In 1869, James W. Law obtained a patent to the southeast quarter of the northeast quarter of section 25, township 21 north, range 2 east W. M. January 3, 1870, Law filed in the office of the county auditor for Pierce county a plat of this property, which had not been on the assessment rolls prior to that time, known as Law's addition to Tacoma. Lots, alleys, and streets were given specific dimensions on the plat. On the north, south, and west sides of the plat no street was provided. On the east side of the plat, a north and south street, Union avenue, was provided. Three other north and south avenues paralleling Union avenue are within the addition. Each of blocks 1, 2, 3, and 4, the eastern tier of blocks of the addition, contains ten lots 52 feet by 115 feet. All other lots are fifty feet by 120 feet each. Each of the blocks 5 to 12, inclusive, contains twelve lots. Each of the western tier of blocks, 13, 14, 15, and 16, contains four lots. The east and west streets shown on the plat are E, F, and G, which some years later were designated,

respectively, 36, 37, and 38. The northern tier of blocks is 4, 5, 12, and 13. Thirty-eighth street is south of blocks 4, 5, 12, and 13. Thirty-seventh is the next parallel street south of Thirty-eighth street, and Thirty-sixth street is the next street south of and paralleling Thirty-seventh street. No street to the south is shown on the plat.

Up to 1908, and subsequently, it was the belief of those in the neighborhood that Wallace's addition, which lay to the north of Law's addition, extended south to the then established north lot line of block 12 of Law's addition. In 1905, L. G. Fenton built a home on lot 6, block 12 of Law's addition. On or about the year 1907, Samuel L. Glenn built a home on lots 3 and 4 of block 12 of Law's addition. Mr. Fenton constructed a wooden walk along what he regarded as the north line of lots 5 and 6 of block 12 of Law's addition, and Mr. Glenn placed a wooden sidewalk along what he considered the north line of lots 3 and 4 of block 12 of Law's addition.

Mrs. L. N. Cushman was the record owner of the lots in block 10 of Wallace's addition which was directly north of block 12 of Law's addition. In 1907, Mrs. Cushman granted to Fenton and Glenn a right of way over a strip of land twenty feet wide extending along the north line of their lots in block 12 of Law's addition.

In 1908, the city engineer of Tacoma made a survey of the north section of Tacoma for the purpose of preparing a city map. In conducting this survey, in which Law's addition was included, the surveyor used as his initial point the southeast corner of the southeast quarter of the northeast quarter of section 25. The surveyor discovered, when he extended the line northward, that this quarter quarter—Law's addition—contained an ex-

cess of approximately twenty-six feet beyond the 1,320 feet specifically covered by the lots, blocks, streets, and alleys in the plat, after allowing to each of them the designated footage specified by the plattor. In running the east-west lines of the addition, a shortage was discovered; that is, the quarter quarter was not as wide as the plattor had contemplated by the designated foot-age allotted to lots, blocks, and streets. In accordance with general engineering practice, as testified by one of the civil engineers, and in order to preserve the continuity of streets in other additions, the surplusage was allocated to the north of the northernmost blocks in Law's addition and the shortage was taken from the west tier of blocks. The city engineer's map, which was prepared following the survey, showed the strip lying to the north of the northernmost lots in Law's addition, but that map did not, nor did any other map, designate the strip as a street.

In September, 1912, plans were prepared by the city engineer's office for letting the paving job on Proctor street north of Thirty-eighth street. Proctor street is the north-south street between blocks 9, 10, 11, 12, 13, 14, 15, and 16 of the addition. These paving plans showed the strip of land, which is the subject matter of this controversy, lying to the north of the northernmost lots in block 12 of Law's addition. Provision was made for a turn-around at the end of the portion of Proctor street which was to be paved, which turn-around was forty-six feet south of the strip in controversy. The plans provided for a concrete curb six inches high extending entirely around the turn-around. Mr. Fenton, owner of the two lots abutting upon the strip, made no protest against the construction of the curb, which cut off vehicular traffic from Proctor street to the strip. Subsequently, enough of the curbing was removed to permit a passageway wide enough

for a single vehicle extending from the turn-around on Proctor street into the strip of land.

December 9, 1912, James W. Law, original plattor of Law's addition, by quitclaim deed conveyed to Samuel L. Glenn and wife "whatever land there may be between Law's Addition to the city of Tacoma, on the North line and the South line of Wallace's Addition to the city of Tacoma lying between the center of Jefferson street, (now called Proctor street) on the west, and the center of Adams street on the east."

The record is clear that, up to 1908, the north block line of Law's addition was considered as the north line of Law's addition. The city graded Proctor street in 1905 and laid wooden sidewalks, which improvements went only to the north lot line of Law's addition. It will be remembered that Mrs. L. N. Cushman granted a right of way over twenty feet lying north of block 12, as all abutting landowners believed that all of the land lying north of the established lot lines in block 12 of Law's addition was a part of Wallace's addition. There is other evidence to the effect that the strip was not used as a passageway for vehicles until 1917.

The only use made of the strip as a passageway was the pedestrian use of the sidewalk which had been placed along the north line of lots 3, 4, 5, and 6 of block 12 of Law's addition. That sidewalk was constructed and the cost thereof borne by the owners of those four lots. The walk extends only along those lots and ends in a high laurel hedge on its eastern terminus, which is the western boundary of lot 12 of block 12 of Law's addition. This walk has not been used by the general public.

In 1917, the Glenns sold lots 3 and 4 and the strip of land in question to Dr. Charles D. Hunter, who graveled a portion of the strip of land at his own expense and conditioned it for automobile travel to his home. Re-

spondents are successors in interest of Dr. Hunter. In 1918, that portion of the strip in front of the Hunter home was planted in potatoes and later the strip was seeded in lawn which was maintained and trimmed regularly through the years by members of the Hunter family. That portion of the strip lying to the east of the Hunter home veered sharply downward to the edge of a very high bluff; in fact, the edge of the bluff actually cut across a portion of the strip and this part of the strip is impassable. The portion of the strip lying to the west of the Hunter home had a graveled passageway running through the middle of it to enable Dr. Hunter to drive a car into his garage and there was grass on either side of this passageway. The part of the strip of land west of Proctor street, and which, pursuant to this opinion, is a part of lots 1 and 2, block 13 of Law's addition, is not open to the public but is fenced into a private yard where grass, shrubs, and trees are cultivated.

In 1926, Judge Cushman built the home now owned by Dr. McGovern, located immediately north of this strip in Wallace's addition. There is evidence that the Hunters advised Judge Cushman of their ownership of the strip of land and gave permission to the Cushmans, who were friends of the Hunters, to make a limited use of the strip. Tenants who subsequently occupied the home after Judge Cushman's departure therefrom were not permitted an unlimited use of the strip. The tenants and their guests honored requests to keep their cars on the west end of the strip. Until 1940, appellants owned the property now known as the McGovern home property. They sold that home to Dr. McGovern and did not reserve any right of way. Appellants then bought from Judge Cushman property immediately abutting on the strip and attempted to

use the strip as a passageway. Appellants insisted that the strip in controversy was a public street, either by statutory dedication or common-law dedication and acceptance, and that in any event respondents had no title to the strip.

The trial court found that the strip was not dedicated as a street by the filing of the plat of Law's addition in 1870; that the use made of the strip of land has at all times been a restricted use and not a public use; that there has never been a common-law dedication nor an acceptance thereof by the public; and that respondents are the owners of the strip and were damaged in the amount of one hundred dollars by the destruction of their gate and other trespasses by appellants on the land.

Counsel for appellants argues that, where a person prepares a plat and records it, if there is any space upon that recorded plat which does not constitute any part of the platted blocks, the plattor necessarily dedicates such space to a public use; therefore, as the strip of land twenty-six feet wide north of the northernmost platted blocks does not constitute any part of the platted blocks, Mr. Law dedicated that strip to public use as a street.

In *Columbia & Puget Sound R. Co. v. Seattle,* 33 Wash. 513, 74 Pac. 670, the plattor filed a plat which purported to cover Maynard's donation claim. The plat showed lots, blocks, and streets of specified widths, and the west boundary line of the plat was shown as the west line of the blocks on that side of the plat. It was discovered that there was a strip of land approximately thirteen and one-half feet in width, which was within Maynard's donation claim running along the west line thereof, but the strip was not pictured on the plat which purported to cover the Maynard's do-

nation claim. The original plattor had executed a deed to the plaintiffs' predecessors, which conveyed

"All our right, title and interest in and to all lots, tracts, pieces, parcels, blocks or portions of land in, upon, or about that portion of the city of Seattle as laid out by David S. Maynard and known as David S. Maynard's Town of Seattle, excepting . . ."

The city of Seattle claimed that the strip of land running along the west side of the Maynard's donation claim, but not shown on Maynard's plat, was dedicated by the plattor as a public street. We held that while the intention of the person making the dedication is thereby determined largely from what appears upon the plat, yet resort must also be had to the law regulating the filing of plats, and the intention must be determined from what the plat shows in connection with requirements of law necessary to a dedication. The plat was covered by the laws of Oregon territory, as they existed at the time the plat was filed. Section 1 of the session laws of the territory of Oregon for 1850-51 pages 260-261 (the governing statute) differs not from the law (Code of 1881, § 2328) by which the plat filed by Mr. Law is governed. Section 2328 reads as follows:

"Any person or persons, who may hereafter lay off any town within this territory, shall, previous to the sale of any lots within such town, cause to be recorded in the recorder's office of the county wherein the same may lie, a plat of said town, with the public grounds, (if any there be,) streets, lanes and alleys, with their respective widths properly marked, and the lots regularly numbered, and the size stated on said plat."

It will be noted that the Oregon law governing Maynard's plat and the law governing Law's plat require that streets with their respective widths shall be properly marked. This was not done by the dedicator of

the Maynard's plat at the place where Seattle claimed the plattor intended to dedicate a street. A blank space was left there, without any marked boundaries or any designation by name. Other streets and alleys were distinctly marked by boundary lines, and the streets also by names. We stated that Maynard must be presumed to have known the requirements of the law and as he so carefully complied with it in designating streets and alleys at other places, and with as much apparent care omitted the designation of one at the place in question, we thought that, when the law and the plat were considered together, it should not be held that Maynard intended to dedicate a street which he in no way designated. The following from our opinion is applicable in the case at bar:

"Appellants cite a number of cases which they urge in support of the rule that, in the interpretation of plats, force must be given to the lines appearing thereon, and that they are often as potent to convey the intention of the dedicator as the written words. The rule urged is well recognized, and is founded in good reason. But applying it to the plat in question, it appears to us that the lines made upon this plat silently say that Maynard intended to designate the streets which he indicated by lines as well as by names, and that he did not intend to dedicate more. We do not think it can be concluded, because a line was drawn closing streets at one place, and such does not appear as closing others at another place, that it follows from such fact that an intention existed to dedicate a street, merely for the reason that it would connect at right angles with the others; and especially is this true in view of the statutory requirements that the street intended to be dedicated must be marked.

"We shall therefore not disturb the court's findings, which are to the effect that the land in question has not been used by the public adversely to respondent's claim of ownership.

"A number of conveyances were introduced in evidence in support of respondent's claim and color of

title. Appellants assign as error that a deed from David S. Maynard and wife to Angus Mackintosh was admitted. It is alleged that the description in the deed is too indefinite to convey title. The language relied upon by respondent is the following:

" 'All our right, title and interest in and to all lots, tracts, pieces, parcels, blocks, or portions of land in, upon, or about that portion of the city of Seattle as laid out by David S. Maynard and known as David S. Maynard's Town of Seattle, excepting . . .'

"Certain described lots and blocks are then named as included in the exception. The language is general, but it was manifestly the intention to convey all lands of the grantors 'in, upon, or about' that portion of Seattle covered by the Maynard plat except the lots and blocks named. The description appears to be broad enough to include the strip of land in question. It lies immediately adjoining the west line of the Maynard plat, and within the patent line of the Maynard donation claim. It is therefore included in the general description, since it is not within the exception, and can be ascertained with certainty as being a part of the grantor's lands 'about' the Maynard plat. In construing descriptions effect must be given to the intention of the parties, and to that end, that shall be considered certain which can be made certain. 4 Am. & Eng. Enc. Law, pp. 793, 794."

In *Frye v. King County*, 151 Wash. 179, 275 Pac. 547, 62 A. L. R. 476, the east line of the plat was enclosed. King county contended that the plattor intended to dedicate as a street a strip of land, running along the east side of plattor's land, which strip was acquired by the plattor after the plat was filed. The strip was located beyond the eastern boundary line shown on the plat which was filed. We held that no dedication to a public use had taken place by the filing of the plat for two reasons: (1) The plattor did not own the strip of land in question at the time he filed his plat, therefore he could not dedicate the strip; (2) that dedication is an affirmative act which must be shown by affirma-

tive evidence or its equivalent; that, if all that appears upon the face of a plat is a blank space, and there is nothing to show that the land covered by it has been devoted to a public use, it cannot be held from the face of the plat alone that the owner intended, by the recording of the plat, to devote the premises represented by the blank space upon the plat to the public use.

In *Osborne v. Seattle,* 52 Wash. 323, 100 Pac. 850, plaintiffs claimed, citing as sustaining authority *Columbia & Puget Sound R. Co. v. Seattle, supra,* a piece of ground in south Seattle, which the city sought to improve as streets. The land which the city claimed to be streets was shown upon the plat itself, and the question was as to the length of the dedicated streets. It was the view in that case, as in *Columbia & Puget Sound R. Co. v. Seattle, supra,* that only that land is considered as being platted which actually is pictured on the plat map.

The use that has been made of the strip of land in controversy has been a restricted one and has been confined to the extreme western portion of the strip, and the owners of the strip of land have permitted occasional use only by their three neighbors. This clearly cannot be deemed such a general use by the public as would evidence a dedication and an acceptance of the strip as a public street.

*Mueller v. Seattle,* 167 Wash. 67, 8 P. (2d) 994, does not sustain the position of appellants that there was a statutory dedication of the strip of land in the case at bar. In the case cited, the strip of land clearly appears within the lines of the plat which was filed, although the strip was not named as a street. We held that the statute (Rem. Rev. Stat., § 9288 [P. C. § 1176], Code of 1881, § 2328), which is still in force, does not require that streets be expressly named in words, letters, or figures upon the plat; that, so long as the strip is shown

on the plat and its width is capable of mathematical determination, it may be found that the plattor intended to dedicate it as a street. The cited case had to do with a strip of land pictured on the plat itself, hence is distinguishable from the case at bar, where the strip of land in controversy does not appear on the plat and for forty years after the plat was filed was unknown to the plattor. The strip lies beyond the enclosed north boundary line of the plat as filed.

*Matthews v. Parker,* 163 Wash. 10, 299 Pac. 354, is not in point. We there held that a dedication plat of lands by metes and bounds, beginning at the corner of a certain quarter and running south "to the center" of the section, but mistakenly stating the true distance, makes the center point of the section a controlling monument which can be mathematically established, and fixes the southern boundary of the plat, notwithstanding an excess distance over the call; and the fact that a scale of the plat indicates that the street on the southern boundary of the plat was only thirty feet wide is not sufficient to overcome the call to the monument disclosing a wider strip for the street. In other words, we held that the general rule is that monuments control courses and distances.

The failure to assess taxes against this strip of land from the time of the filing of the plat in 1870 until 1912, when the strip was conveyed to the Glenns, was due to the ignorance of both taxing officials and landowners as to the existence of the land in question; hence the failure to levy and collect taxes loses all force so far as establishing an intent to dedicate is concerned. *Fuller v. Township of Belleville,* 67 N. J. Eq. 468, 58 Atl. 176. See, also, *Chicago v. Borden,* 190 Ill. 430, 60 N. E. 915, to the effect that the public cannot become entitled to a man's property because no taxes are assessed against it, and because, by reason

of such nonassessment, no taxes are paid by the owner. Further citation of authority to the same effect will be found in the annotation at page 1179 *et seq.*, of L. R. A. 1916B.

The argument of counsel for appellants that the preparation of a map, including Law's addition, by the city engineer constituted a replatting of the addition within the terms of the statute (Rem. Rev. Stat., § 9308 [P. C. § 1174]), reading as follows, is without substantial merit:

"Whenever the recorded plat of any city, or addition thereto, does not definitely show the location or size of lots or blocks, or the location or width of any street or alley in such city or addition, the city council of the city in which the land so platted is located is hereby authorized and empowered by ordinance, and the action of its proper officers, to cause a new and correct survey and plat of such city or addition to be made and recorded in the office of the county auditor of the county in which such city or addition is located, which corrected plat shall follow the plan of the original survey and plat, so far as the same can be ascertained and followed, and a certificate of the officer or surveyor making the same shall be indorsed thereon, referring to the original plat corrected thereby, and the deficit [defect] existing therein, and corrected by such new survey and plat; and the ordinance authorizing the making of such plat shall be recorded in the office of the county auditor of said county, and said certificate shall show where said ordinance is recorded; and such plat, when so made and recorded, or a copy thereof certified as provided in section 9307, shall be admissible in evidence in all the courts of this state. [Cd. '81, § 2340; 1 H. C., § 756.]"

We do not find any evidence in the record before us that the city council enacted an ordinance which authorized the making of a new and correct survey and plat of Law's addition; nor does the record disclose that a corrected plat was filed with the county auditor,

with certificate of proper officers indorsed thereon. In short, there is no evidence of compliance with the statutory (Rem. Rev. Stat., § 9308) conditions prerequisite to correction of defects in plat of Law's addition.

■ There was no common-law dedication of the strip of land in controversy.

"There are two things which are absolutely essential to a valid common law dedication, viz.: (1) An intention on the part of the owner to devote his land, or an easement in it, to a public use, followed by some act or acts clearly and unmistakably evidencing such intention; and (2) an acceptance of the offer by the public. In making a dedication, no particular formalities are necessary. The statute of frauds is not applicable in such cases, and therefore a deed or other instrument of writing is not necessary, though, of course, a dedication may be made by deed. The intention to make a dedication may be shown by particular acts of the owner, such as throwing open his land to public travel, or platting it and selling lots with reference to the plat, or acquiescing in or positively assenting to its use by the public, or, in short, by any act positively and unequivocally indicating such intention." *Seattle v. Hill*, 23 Wash. 92, 97, 62 Pac. 446.

See, also, *Columbia & Puget Sound R. Co. v. Seattle, supra; Provident Trust Co. v. Spokane,* 63 Wash. 92, 114 Pac. 1030; *Stevens County v. Burrus,* 180 Wash. 420, 40 P. (2d) 125.

The appellants did not sustain the burden of proof resting upon them to show a common-law dedication of the strip of land. As there was never any use of the land by the public generally, of course appellants did not establish either a common-law dedication or an acceptance of the strip by the public. An intent to dedicate will not be ascribed to an owner who, in a spirit of friendliness and to accommodate such persons, permits his neighbors to pass over or use his premises as is the situation in the case at bar; such use will be

regarded as permissive merely and as founded upon a revocable license.

Finally, counsel for appellants contends that there was a failure of respondents' title to the subject matter of this controversy. The description of the property conveyed as

"Whatever land there may be between Law's Addition to the City of Tacoma on the North line and the South line of Wallace's Addition to the City of Tacoma, lying between the center of Jefferson Street, (now Proctor Street) on the West and the center of Adams Street on the East,"

is sufficiently definite to clearly establish legal title in the Glenns and their successors in interest (respondents) as the strip of land does lie between Law's addition and Wallace's addition. It is unnecessary to burden this opinion with a recital of other reasons which sustain the right of respondents to maintain this action as owners of the subject matter of this controversy.

It is not essential to a determination of the question presented by this appeal to discuss the assignment that the court—to which the cause was tried without a jury—erred in permitting, over objection, the scrivener who prepared the quitclaim deed from Mr. Law to the Glenns to testify respecting the intention of Mr. Law to convey the strip in question to the Glenns. There was not any necessity to rely upon parol evidence, and the trial court did not rely upon the scrivener's testimony; hence, admission of that evidence could not constitute reversible error.

The judgment is affirmed.

STEINERT, BLAKE, and ROBINSON, JJ., concur.

March 9, 1943. Petition for rehearing denied.