[No. 35741.    Department One.    August 31, 1961.]

SATOSHI TSUBOTA *et al., Appellants,* v. GEORGE GUNKEL *et al., Respondents.**

*Reported in 364 P. (2d) 549.

*Atwell, Moore & Walstead,* for appellants.

*J. E. Stone,* for respondents.

WEAVER, J.—This is an action to quiet title to a strip of land eighty feet wide that extends from east to west, bounded on the north by plaintiffs' (appellants') property and on the south by the properties of defendants (respondents). Plaintiffs, husband and wife, claim ownership by adverse possession.

Four groups of defendants[1] appeared in the action and denied plaintiffs' claim of ownership by adverse possession. By cross-complaint, each claimed ownership of the portion of the disputed strip that adjoins his tract of land on the north.

The trial court entered judgment, determining (1) that plaintiffs owned the north forty feet of the disputed strip that is contiguous to the south boundary of their property; (2) that plaintiffs owned an easement and right of way for a road—"as said road is now located"—that extends from west to east over a portion of the west end of the disputed strip, but one of the defendants, who owned a tract of land south of the strip, has the right to use the road; (3) that plaintiffs owned an easement to maintain a flume—"as said flume is now located"—for the flow of irrigation water across a portion of the disputed strip immediately north of a tract of land owned by one of the defendants; (4) that each defendant is the owner of the south forty feet of the disputed strip immediately north of and adjacent to his tract of land, subject to plaintiffs' easements for road and flume—as now located.

The facts giving rise to this dispute are these:

April 16, 1879, Amos Stark and William Hicinbotham owned all of the land now owned by the parties to this action. On that day, they filed, in the office of the county auditor, a plat designated "Town Plat of Columbus Klickitat County Washington Territory."

[1]Klickitat county appeared, denied the allegations of all parties, but did not participate in the trial or appeal.

Eight days later—April 24, 1879—Amos Stark filed a plat of "Amos Stark's First Addition to the Town of Columbus Klickitat County." The addition joins the townsite on the east. The land described in both plats was then, and still is, wholly outside the limits of an incorporated town or city. Both plats designate city blocks comprised of eight fifty-foot lots, four on each side of a fifteen-foot alley. Eighty-foot streets are designated.

Defendants are the owners of the north tier of lots in the townsite and addition immediately south of the disputed strip of land. Any interest they may have in the forty-foot strip of land north of the north line of the northern tier of lots of the townsite and Stark's Addition thereto is conditioned upon there being a Fourth Street along the north boundaries of the townsite and addition. Such a street could arise only by dedication to the public, either express or implied.

In the main, the judgment from which plaintiffs prosecute this appeal is based upon defendants' theory of the case.

Plaintiffs' first assignment of error is directed to finding of fact No. 6:

"That to the North of Blocks . . . of said Columbus Townsite, and to the North of Blocks . . . in said Amos Stark's First Addition . . . there was at the time of dedication, and is now a street which has been named and designated Fourth Street of the width of eighty feet; which said street was dedicated for the use and benefit of the public for like use and benefit of all who might thereafter acquire ownership of the respective lots in said blocks . . . in said townsite and addition thereto."

Referring to the original plats, as recorded in 1879 in the office of the county auditor, we find the following:

(a) *Townsite.* The streets are neither named nor numbered. Above the north line of the north tier of lots is a line extending east and west. Above the line is written "Town Plat of Columbus Klickitat County Washington Territory." Below this line and above the north line of the lots is a space, or area, that is open at all its intersec-

tions, with streets extending north and south in the townsite. Does this space (the disputed strip later referred to as Fourth Street) indicate a street?

(b) *Stark's Addition.* The north and south streets are designated by letter. Starting at the south end of the plat, the east and west streets are designated First, Second, and Third, coinciding with the streets in the townsite to the west. The north line of the plat is an extension, east and west, of the north line of the northern tier of city blocks, so that the north and south streets appear to be closed at the north; they do not open on the disputed strip, as in the plat of the townsite.

Error is not assigned to finding of fact No. 7:

"That the said Fourth Street described in paragraph six of these findings remained unopened for public use for a space of five years from and after the filing of said dedications; and since said date the said Fourth Street has remained, and is now unopened for public use; and by reason aforesaid and the facts herein found the said Fourth Street was vacated as a public road April 24, 1884."

Finding of fact No. 7 becomes an established fact of this case[2], subject to our disposition of plaintiffs' first assignment of error directed to finding of fact No. 6.

■ The controlling question is: What was the intent of the parties who made the plats? This intention is to be gathered principally from the plat itself; though, when the plat is ambiguous or uncertain, surrounding circum-

---

[2]In his memorandum opinion, the trial court said: "The townsite and addition in question was laid out and the streets dedicated in 1879. Fourth Street was never opened for public use. Under the law it was vacated five years thereafter. Lewis vs. Seattle, 174 Wash. 219, citing Chapter 19, Laws of 1890.

"After the expiration of the five year period the south half of Fourth Street attached to the property of the answering defendants and cross complainants and title vested in their predecessors in title. The north half attached to the property of the plaintiffs and title vested in their predecessors in title.

" 'If the property vacated is a lot, title thereto shall vest in the rightful owner. If it is a street or alley, it shall attach to the lots or grounds bordering thereon, and all right or title thereto shall vest in the person owning the property on each side thereof, in equal proportions . . .' Sec. 58.12.110 RCW [now 38.11.030]."

stances and even extrinsic evidence may be considered for the purpose of determining the real intention of the plattor. *Osborne v. Seattle,* 52 Wash. 323, 100 Pac. 850 (1909); *Olson Land Co. v. Seattle,* 76 Wash. 142, 136 Pac. 118 (1913).

■ In *Gwinn v. Cleaver,* 56 Wn. (2d) 612, 615, 354 P. (2d) 913 (1960), this court said:

"The law is settled that, in the interpretation of maps and plats, all doubts as to the intention of the owner or maker should be resolved against him. *Mathews v. Parker,* 163 Wash. 10, 299 Pac. 354."

In the instant case, the record contains a photostatic copy of an undated map from the county assessor's office. Both platted additions appear thereon with a "Fourth Street" designated to the north of the northern tier of lots of both additions. The map is of little evidential value. It does, however, indicate the interpretation placed upon the two plats by a county official.

■ We deem the following facts to be meaningful and to support the trial court's finding that

". . . there was at the time of dedication, and is now a street which has been named and designated Fourth Street of the width of eighty feet. . . ."

(a) Amos Stark was one of the dedicators of the townsite plat and the sole dedicator of the plat of the addition; (b) the dedicators owned the property immediately north of both plats; (c) the townsite plat, which was recorded first, is subject to the interpretation that the dedicators intended to establish a street along the north tier of city blocks of the townsite; (d) First, Second, and Third streets of the addition join the streets of the townsite; (e) lots two and three of each block would not have access to a street—they could be reached only through the alley— and lots one and four would be accessible only from the alley and from the side street if there was not a dedication of a street north of the northern tier of city blocks.

In *Osborne v. Seattle,* 52 Wash. 323, 327, 100 Pac. 850 (1909), this court said:

". . . In this case, streets are designated, and must

extend to the extreme parts of the plat, *or several of the lots will have no street frontage at all.* . . . and the only *access would be through an alley sixteen feet wide.* . . . It is not to be supposed that land would be platted into lots and blocks without any means of access. . . ." (Italics ours.)

Plaintiffs' first assignment of error is not well taken.

Plaintiffs' second assignment of error is directed to the court's refusal to grant their motion to reopen the case and permit them to submit further evidence.

■ Reopening a cause for additional evidence rests within the discretion of the court; the exercise of that discretion is subject to review. *Rochester v. Tulp*, 54 Wn. (2d) 71, 337 P. (2d) 1062 (1959), and cases cited.

■ The record cannot support a conclusion that the trial court abused its discretion. Part of the proffered evidence was cumulative; the balance was a matter of public record at the time of trial. There is nothing in the record to establish that this evidence could not have been produced at the trial by the exercise of due diligence. See *Starwich v. Ernst*, 100 Wash. 198, 207, 170 Pac. 584 (1918).

Rule on Appeal 42(a) (7), RCW, Vol. 0, provides in part:

". . . Whenever error is assigned to any finding or findings of fact, so much of the finding or findings made or refused as is claimed to be erroneous *shall be set out verbatim in the brief* and reference made thereto by number in the 'assignments of error.'" (Italics ours.)

Rule on Appeal 43, RCW, Vol. 0, provides in part:

"No error assigned to any finding or findings of fact made or refused *will be considered* unless so much of the finding or findings as is claimed to be erroneous *shall be set out verbatim in the brief.*" (Italics ours.)

■ Plaintiffs' third assignment of error is directed to three findings of fact not "set out verbatim in the brief"; hence, it cannot be considered. *San Juan County v. Hage*, 57 Wn. (2d) 905, 357 P. (2d) 166 (1960); *Steele v. Queen City Broadcasting Co.*, 54 Wn. (2d) 402, 341 P. (2d) 499 (1959); *Hinz v. Lieser*, 52 Wn. (2d) 205, 324 P. (2d) 829

(1958). Recently, in *State v. James, ante* p. 383, 363 P. (2d) 116 (1961), we explained the reason for these rules.

As we have pointed out heretofore, the court's findings of fact and judgment are, in the main, based upon defendants' theory of the case; namely, plaintiffs are entitled to the north forty feet of the strip and defendants to the south forty feet adjacent to their respective properties (subject to the described easements) on the theory of dedication and vacation thereof.

Inherent in the findings and judgment is a denial of plaintiffs' claim to the strip by adverse possession.

In his memorandum opinion, the trial court, after analyzing the applicable law, stated:

"There is no substantial evidence of adverse possession in Mr. Ziegler's [plaintiffs' grantor] occupancy of the premises. The farming of the strip by plaintiffs for two or three years after the bull dozing in 1952 would have constituted adverse possession had it continued for ten years. The use of the strip for piling brush and burning, and for piling crates and boxes would not constitute adverse possession.

"Evidence of adverse possession is to be strictly construed and every presumption is to be made in favor of the true owner. The burden of establishing adverse possession has not been sustained."

The record supports the trial court; hence, plaintiffs' remaining assignments of error are not well taken.

The judgment is affirmed.

HILL, ROSELLINI, FOSTER, and HUNTER, JJ., concur.